In the Matter of Leo Francis
SCHNORE, Debtor.

H. C. PRANGE COMPANY, Plaintiff,

v.

Leo Francis SCHNORE, Defendant.

Adv. No. 80–0175.

United States Bankruptcy Court,
W. D. Wisconsin.

Aug. 7, 1981.

Barret J. Corneille, of Bell, Metzner & Gierhart, S. C., Madison, Wis., for H. C. Prange Co.

Robert W. Kuehling of Kuehling & Kuehling, Madison, Wis., for Leo Francis Schnore.

## OPINION

ROBERT D. MARTIN, Bankruptcy Judge.

The debtor, Leo Francis Schnore (hereinafter Schnore), is a 53 year old professor of sociology at the University of Wisconsin—Madison. He earned $32,447.67 in 1979 and currently earns approximately $37,000 per year. From mid–1979 to January, 1980, he had maintained a balance of approximately $8,000 in a savings account. In the summer of 1979, he defaulted on a number of his credit card obligations by not making the required monthly payments. By September, he had large balances due on Visa, Master Charge, Sears, Mobil, Gimbels and Texaco credit card accounts. He stopped using these credit cards in the fall of 1979 as he felt he had "reached his limit" with

these creditors. He made no payments subsequent to that time on any of those accounts. He missed car payments of $200 due in November and December of 1979. His car was later repossessed. Although in prior years he had maintained only a small amount of debt, as of December, 1979, he had accumulated debts of approximately $15,000.

Schnore had held an H. C. Prange Co. (hereinafter Pranges) credit card since approximately 1974. Prior to December, 1979, his largest monthly Pranges credit card bill was $176.43. In December, 1979, and January, 1980, Schnore made credit purchases at Pranges totaling $3,467.54. These purchases were represented as being for some personal items, but primarily for gifts to his children. He stated that it had been his practice to make large gifts to his children, who lived away from home. In prior years he had primarily paid cash for such gifts.

In January, 1980, Schnore learned that his ex-wife had spinal cancer and withdrew the $8,000 from his savings account and sent it to her to support his daughter who was a freshman at Yale. Schnore had no legal obligation to provide this support, but chose to do so when he found out about his ex-wife's illness. Prior to this time, during the approximately eight months in which he had past due accounts totaling approximately $15,000, he had not used any of his savings to pay creditors.

Schnore made no payment on any of his credit obligations during the last two months of 1979 and the first nine months of 1980. A number of creditors commenced legal action against him in early 1980 and he completely stopped making credit purchases. He first saw an attorney about his debt problems in June, 1980, and signed a petition for bankruptcy in July, 1980, which was filed on September 19, 1980. On October 23, 1980, Pranges filed a complaint in this action. The trial was held on February 3, 1981.

The issue at trial is whether Schnore's use of his Pranges credit card constituted obtaining property by false pretenses or false representations.[1] The applicable statute is 11 U.S.C. § 523(a)(2)(A) which reads as follows:

§ 523.  *Exceptions to discharge*

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2)(A) is taken from § 17(a) of the Bankruptcy Act of 1898 (11 U.S.C. § 35(a) (1976)), which reads as follows (in pertinent part):

§ 17.  *Debts Not Affected by a Discharge.*

a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations . . . .

The sections are substantially identical. *Brown v. Felsen*, 442 U.S. 127, 129 N.1, 99 S.Ct. 2205, 2208, 60 L.Ed.2d 767 (1979). The case law which arose under § 17a(2) has been used by courts for guidance in construing § 523(a)(2)(A). *See, e. g., In re Miller*, 5 B.R. 424, 2 C.B.C.2d 849 (Bkrtcy.W.D.La. 1980); *In re Ashley*, 5 B.R. 262, 2 C.B.C.2d 949, 6 B.C.D. 655 (Bkrtcy.E.D.Tenn.1980); *In re Green*, 5 B.R. 247, 2 C.B.C.2d 905, 908 (Bkrtcy.N.D.Ga.1980); and *In re Jones*, 3 B.R. 410, 1 C.B.C.2d 676, 6 B.C.D. 68 (Bkrtcy.W.D.Va.1980).

It is conceptually difficult to distinguish "false pretenses" from "false representation." A plausible distinction, which finds some support in the case law, is that "false representation" refers to an express misrepresentation, while "false pretenses" means implied misrepresentations or conduct intended to create and foster a false impression. *See Davison-Paxon Co. v.*

---

1. The parties have stipulated that no actual fraud was committed.

*Caldwell*, 115 F.2d 189, 193 (5th Cir. 1940) (dissenting opinion). However, the reported decisions generally do not distinguish between the two phrases. It seems useful to consider the § 523(a)(2)(A) exception as involving debts obtained by "false pretenses," since this is the broader term and can be read to include both express and implied misrepresentations.

The elements which a creditor must prove in order to have a debt declared non-dischargeable under § 523(a)(2)(A) were set forth by the 7th Circuit Court of Appeals in *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979).

§ 17(a)(2) requires that for a debt to be nondischargeable the bankrupt must have obtained the money or property through representations known to be false or made with reckless disregard for the truth amounting to willful misrepresentation. . . . In addition, the courts require a showing of fraudulent intent or moral turpitude on the part of the debtor, i. e., an intent to deceive. . . . These questions of knowing or reckless falsehood and intent to deceive are questions of fact . . . . [W]here, as here, a person knowingly or recklessly makes a false representation which the person knows, or should know, will induce another to make a loan, intent to deceive may logically be inferred. . . . Matera next contends, correctly, that § 17(a)(2) requires a finding that the creditor actually relied upon the false representations. . . . And of course such reliance must be reasonable. But here again it cannot be said that the court committed clear error in finding that Carini acted reasonably in relying on Matera's representations. Matera's arguments on this point rely almost entirely upon Carini's failure to make inquiries and examine records *after* the loan had been made. The reasonableness of appellee's conduct after turning over his money is, however, irrelevant to the reasonableness of his reliance on the representations which induced the loan in the first place. . . . 592 F.2d at 380–381.

■ The appropriate standard requires that for a debt to be held non-dischargeable, the following must have been true at the time the property was obtained: (1) the debtor obtained the property by means of representations which he knew were false or which were made with reckless disregard of their truthfulness; (2) the debtor had an intent to deceive, which may be inferred from the knowing or reckless misrepresentation made to induce another to transfer property to the debtor; and (3) the creditor actually and reasonably relied on the misrepresentation.[2] See *In re Ratajczak*, 5 B.R. 583, 586 (M.D.Fla.1980). These elements deserve further discussion for their application to this case.

### 1. *Fraudulent or Reckless Misrepresentation*

■ The general rule is that the misrepresentation required by § 523(a)(2)(A) may be one which is implied by the debtor's conduct or silence as well as an overt statement. The early case of *Davison-Paxon Co. v. Caldwell, supra,* held to the contrary. In that case the court, over a strong dissent by Chief Justice Sibley, stated that a debt would be discharged where the debtor made no overt false representations but had failed to disclose her disinclination and inability to repay the debt when she incurred it.

The amended petition carefully refrains from charging that the defendant represented anything or made any pretenses. It charges that she was insolvent, that she had no present intention to pay for

---

2. The 9th Circuit has interpreted § 17(a)(2) as containing five elements:
   (1) That the debtor made the representation;
   (2) That at the time he knew they were false;
   (3) That he made them with the intention and purpose of deceiving the creditor;
   (4) That the creditor relied on such representations;

(5) That the creditor sustained the alleged loss and damage as the proximate result of the representation made.
*In re Houtman*, 568 F.2d 651 (9th Cir. 1978). There do not appear to be any material differences between these two formulations of § 523(a)(2)(A) elements.

the goods purchased and that she concealed her insolvency and intention to pay for the same from the plaintiff and that her conduct in purchasing the merchandise without present intention to pay for same and knowing that she was insolvent, was false, deceitful and fraudulent. We think it can hardly be doubted that her conduct in so doing was deceitful in the sense that she did not act in a straightforward and honest way in not making full disclosure of her financial condition, but such conduct is not within the exception. It does not except from discharge, debts created by obtaining credit through concealment of insolvency and present inability to pay. It excepts from discharge "Liabilities for obtaining money or property by false pretenses or false representations." Within the meaning of that statute then, there were no false pretenses, no false representations here. There was merely the obtaining of credit without full disclosure with the knowledge that if full disclosure had been required, credit might well not have been given, but that was all. A remedial statute, like that of bankruptcy intended for the relief of debtors, must, insofar as denial of discharges and therefore of relief, be construed strictly so that all debts except those coming exactly within the exception will stand discharged. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717.... [The] question is, does the statute except from the discharge all obligations affected with deceit or fraud in their incurring whether the deceit or fraud is actual or implied, or does it except only those where there is actual overt false pretense or representation? We think it clear that only the latter are excepted. 115 F.2d at 190–191.

The dissent in *Davison-Paxon* discussed a number of prior decisions which had held that an implied misrepresentation could render a debt non-dischargeable, and concluded:

I think it clear that one who offers to buy goods and promises to pay, expressly or impliedly, and at the time has no purpose of paying, but intends to obtain the goods

for nothing, does obtain them by a false pretense [sic] and is not entitled to a discharge from his liability in tort. 115 F.2d at 194.

Subsequent commentators and courts generally have held that the dissent in *Davison-Paxon, supra,* sets forth the better rule. The 5th Circuit Court of Appeals questioned the decision, without explicitly overruling it, in *In re Boydston,* 520 F.2d 1098, 1101 (5th Cir. 1975). Collier on Bankruptcy (15th ed.), ¶ 523.08 states:

Thus, a purchase of goods on credit by a debtor who does not intend to pay therefor, constitutes false representation, although there is authority to the contrary. 3 Collier on Bankruptcy (15th ed.) at 523–44, 523–45.

(See notes 19 and 20 to ¶ 523.08 which cite decisions supporting the general rule and criticize *Davison-Paxon, supra.*)

In *In re Quintana,* 4 B.R. 508, 2 C.B.C.2d 293, 6 B.C.D. 464, 465 (Bkrtcy.S.D.Fla.1980), the bankruptcy judge stated that he did not believe that *Davison-Paxon* remains good law in the 5th Circuit.

11 U.S.C. § 523(a)(2)(A) exempts from a discharge a debt:

"... for obtaining money, property services, or an extension, renewal, or refinance of credit, by (A) false pretenses, a false representation, or actual fraud ..." This provision, with the addition of actual fraud, is identical to § 17a(2) of the prior Act and, therefore, the decisions applying § 17a(2) are pertinent. It is generally recognized that silence or concealment as to a material fact can constitute a false pretense or a false representation as surely as an overt act. Collier on Bankruptcy (15th ed.) Para. 523.08. *Davison-Paxon Co. v. Caldwell,* 5 Cir. 1940. 115 F.2d 189 holds to the contrary. This decision has been frequently questioned. Collier on Bankruptcy (15th ed.) Para. 523.08, note 20. I am satisfied that it no longer reflects the rule in this circuit. *Matter of Boydston,* 5 Cir. 1975, 520 F.2d 1098, 1101; *Matter of Wood,* 5 Cir. 1978, 571 F.2d 284. I conclude that plaintiff's claim is nondischargeable. (Footnotes omitted.)

See also In re Schneider, 3 B.C.D. 175, 176 (D.Nev.1977). But see In re Newberry, 1 B.C.D. 419 (S.D.Ala.1974) in which the bankruptcy court ordered a debt discharged for lack of an overt misrepresentation on the grounds that Davison-Paxon had not been overruled and was, as such, controlling.

In the context of credit cards, courts in other circuits have consistently held that no overt misrepresentation is necessary for nondischargeability under § 523(a)(2)(A). Rather, the debtor's presentment of his or her credit card and signature on the credit receipt in exchange for goods is deemed an implied representation that the debtor has the intent and ability to pay for the goods. This implied representation makes overt statements of intent and solvency unnecessary.

In re Black, 373 F.Supp. 105, 107 (E.D. Wis.1974), states the nature of this representation as follows:

Each time they presented their credit cards and signatures for the purchases in question, the Blacks impliedly represented to Kohl's that they had the wherewithall, as well as the intention, to pay for them. To the extent that they had kept their Kohl's credit account current until then, the Blacks engaged in a course of conduct and represented themselves in a manner upon which Kohl's relied. The Blacks' active purchasing conduct and the symbolic representations involved in the use of their credit card constituted a form of fraud on the store. Had the Blacks represented, orally or in a separate writing, at the time of their purchases that they could and would pay for them, it is clear that such representations would have been false for purposes of § 17(a)(2). The fact that they utilized their credit cards and signatures alone should not change the result.

Similarly, the recent case of In re Banasiak, 8 B.R. 171, 3 Bankr.L.Rep. (CCH) ¶ 67,767 (Bkrtcy.M.D.Fla.1981), states:

Purchase of merchandise by use of a credit card is an implied representation to the merchant and to the issuer of the card, that the buyer has the means and the intention to pay for the purchase. See also In re Dyer, 4 B.C.D. 180, 181 (W.D. Wis.1978) and In re Schneider, supra.

■ In sum, Pranges will be held to have met its burden of proving a misrepresentation by a debtor if it can show that: (1) the debtor purchased goods by means of a credit card; and (2) at the time that the purchase was made, the debtor either did not have the means to or did not intend to pay for the goods. It has met that burden. In December, 1979, and January, 1980, when Schnore made the purchases at Pranges upon which this lawsuit is based, he was over $15,000 in debt. He had stopped using his other credit cards because he believed that he had "reached his limit" on those accounts. He had missed his November and December car payments and made no payments on his other credit card accounts since the previous summer despite having a substantial savings account balance. His inability or unwillingness to pay the other debts clearly establishes that he was not paying his credit obligations as they became due and established no basis for believing that he would do any better with his Pranges account. As such, his use of the Pranges card clearly constituted a misrepresentation as to his wherewithall and intent to pay debts which accrued on it.

## 2. Intent to Deceive

■ The presence of a subjective intent on the part of the debtor to deceive the creditor or its agent into believing that he or she did intend to pay for goods purchased on credit when in fact the opposite is true is the second element which the creditor must prove to have a debt declared non-dischargeable under § 523(a)(2)(A). This intent not to repay the debt need not be explicit, and may be inferred from the circumstances of the cases despite the debtor's avowal that he fully intended to repay the debt. In re Black, supra, 373 F.Supp. at 107, states:

Mr. Black's testimony, as well as the exhibits, establish the fact that Mr. and Mrs. Black were insolvent as of Novem-

ber 14, 1972, when they authorized their attorney to prepare their bankruptcy papers. The circumstances surrounding their purchases make it convincingly clear that the Blacks had no intention to pay for them.

Those portions of their testimony in which the Blacks attempted to explain away their extensive purchases during the period in question are incredible.

This intent not to repay must be present at the time the goods are purchased, and a debt will be discharged if the creditor cannot show that the bad intent existed at the time of purchase even though the debtor subsequently decided not to repay the debt. Because of this "time of purchase" requirement, some courts have split credit card debts into dischargeable portions, involving those purchases where no bad intent existed, and non-dischargeable portions, consisting of purchases made at or after the time when the requisite bad intent was found to exist. *See, e. g., In re Dyer, supra; In re Banasiak, supra*; and *In re Gibson*, 1 B.C.D. 449 (S.D. Ohio 1974).

Particular acts or circumstances from which courts have inferred an intent not to repay include the following:

(1) Consultation with attorney about filing for bankruptcy. *In re Black, supra; In re Schneider, supra*, 3 B.C.D. at 176, in which the court stated:

It is difficult to read the human mind as to the precise moment a person "decides" to file bankruptcy. It seems only fair that so long as defendant had called upon an attorney for that specific purpose and had considered and had been considering bankruptcy for some time she was at very least deceiving her creditors by giving a false impression that she intended to pay. It is plain that one who presents herself as a purchaser with good intentions should not be at the same time "considering" bankruptcy.... False pretenses need not be overt in uttering a check with insufficient funds. I see no difference in uttering a credit card with the transaction under the personal vacillation of the purchaser as to whether or not he will or will not pay depending upon whether he will or will not file for bankruptcy. Certainly there is no pure unadulterated intention to pay when the transaction is shadowed by a pall of indecision as to whether bankruptcy will be filed. Business credit demands a more honest state of mind and if there be reasonable doubt that payment will be made it borders on cheating and should not be condoned even though Bankruptcy Courts are certainly designed to enforce the humane law of discharge to aid bankrupts in a fresh start.

(2) Debtor is insolvent at the time the purchases are made, either because the debtor's liabilities exceed his assets, or because he is unable to pay his debts as they become due. *See In re Black, supra; In re Kell*, 6 B.R. 695, 6 B.C.D. 1193, 1195 (Bkrtcy.D.Colo.1980), which had facts very similar to the case at hand, in which the court stated:

First it is clear that during the period from December, 1979 through May, 1980, Mr. Kell was accumulating debt greater than his ability to pay. Second, at the rate this debt was accumulating—over $2,400.00 per month—it is clear he did not have sufficient income from which to support himself and make repayment. Furthermore, from the very outset of the use of his cards, Mr. Kell was clearly insolvent.

Moreover, he must have been aware that the only means he had to repay the Bank was his income. Yet, despite the fact that income was charged with the burden of Chapter 13 payments, and despite the fact that it was obviously insufficient to meet his other needs, Mr. Kell continued to use his Master Charge and Visa cards to acquire obligations which pushed his debt even further beyond his ability to pay.

Again, Mr. Kell testified he always thought he would be able to repay, and thus he continued to use his cards. Yet, in light of the circumstances, that thought was clearly unrealistic. In fact, if such a thought had been entertained, it had to be a reckless disregard for reality.

Even assuming some justification for the sizable drain the illness of Mr. Kell's mother caused to his income, there is no evident justification for the remaining unexplained debts acquired while Mr. Kell was protected by the Chapter 13 stay. It is thus obvious that Mr. Kell was simply living far beyond his means. Given his sophistication, age, and intelligence, it would belie credence to assume he was ignorant of that fact.

In light of that knowledge and the other circumstances of this case already related, I am convinced the debt owed the Bank here falls within the exceptions to the discharge provided in 11 U.S.C. § 523(a)(2)(A).

In arriving at this conclusion, I am aware that no evidence exists that establishes an overt false pretense on the part of the Defendant. Yet, inherent in his continued use of his credit cards without a disclosure of his insolvency when he was manifestly unable to repay the Bank in full, is a circumstance from which an intent not to pay may be inferred. (Footnotes omitted.)

Similarly, in *In re Jordan, supra*, 3 B.C.D. at 1294, the court stated:

The Court has reviewed closely the evidence submitted regarding the credit charges made by Mrs. Jordan at Lazarus during the latter part of 1975 and the early part of 1976 and the Court believes that it was not reasonable for Mrs. Jordan to expect to be able to pay for the charges which she was incurring on behalf of, or for the benefit of, Mr. Thomas. Mrs. Jordan was insolvent at the time of these charges, owning no assets of significant value and having obligations totalling $5,000.00 or more. Given her financial status at the time of the incurrence of these charges, her recent period of poor health, her unemployed status and her difficulty in finding employment, and the pay scale her job skills would command even if a job were to be found, and other factors affecting her ability to repay these obligations incurred at the Lazarus Department Store, it was totally unreasonable for Mrs. Jordan to expect to repay the obligations. (Footnotes omitted.)

(3) The purchases made on credit are of a nature or quantity as to indicate that the debtor did not intend to pay for them. *See In re Black, supra; In re Kell, supra; In re Portz*, 1 B.C.D. 51 (M.D.Ga.1974); *In re Reinhart*, 1 B.C.D. 666 (E.D.Va.1975); *In re D'Amico*, 1 B.R. 170, 171 (Bkrtcy.W.D.N.Y. 1979), in which the court stated:

Here within three months of bankruptcy we have a bankrupt who has already exceeded the credit limit on his card deliberately charging goods on the credit card, knowing that the bank does not wish to extend him additional credit. He makes his purchases so that the merchant does not check with the credit card company. He does this while he is unemployed and not receiving sufficient monies to live upon and meet his obligations which must be met. After living it up in Florida on the credit card, he returns to Rochester and promptly files a petition in bankruptcy. Clearly at the time he charged the goods he had no intention to pay for them. Therefore, I find that the bankrupt has obtained $3,383.78 from the plaintiff under false pretenses.

and *In re Ratajczak, supra*, 5 B.R. at 586, in which the court stated:

Within an approximate two month span, the Defendant made approximately $1,000 worth of purchases most of which were gift certificates which were used not as gifts, but by the Defendant and his wife to obtain merchandise for themselves and the cash differential between the purchase and the face amount of the certificate. Although the record reveals that the Defendant had utilized this same method of purchasing in the past, the number of gift certificates greatly increased after October. These transactions demonstrate a gross abuse of the credit facility extended to him for under such strained financial circumstances, the Defendant could not have believed that he would be able to pay for these purchases. The Defendant's argument that the purchases increased drastically during

the period in question only due to Christmas does not negate the fact that he was aware of his inability to repay the debt incurred.

■ Applying these criteria to the present case, it is clear, despite his representations to the contrary, that Schnore did not intend to pay for the goods at the time he purchased them from Pranges. As stated above, Schnore was insolvent at the time he made the purchases. While there is no evidence that he had considered filing for bankruptcy, his financial circumstances were such that he could not have reasonably believed that he would pay for the purchases. Furthermore, at the time he bought the goods at Pranges, he had already defaulted on a number of other credit card accounts and had large outstanding balances on those accounts. His failure to make any payment whatsoever on those accounts, both before and after he purchased the goods at Pranges, is strong evidence that he did not intend to pay the Pranges bill. The extent and number of those purchases in light of the fact that his largest previous credit balance on the Pranges card was $176 further indicate a subjective intent not to repay the debt. In sum, plaintiff has satisfactorily shown that Schnore did not intend to pay for the goods at the time that he purchased them.

### 3. *Reasonable Reliance by the Creditor*

■ The final element which a creditor must prove to hold a debt non-dischargeable is that it actually and reasonably relied on the debtor's misrepresentations to its detriment. Because of this requirement, debts have been discharged, despite proof of a debtor's misrepresentation and intent not to repay, if the creditor's conduct reveals that it did not rely on the misrepresentation. Examples of this are *In re Dyer, supra,* where the creditor checked debts listed on a financial statement and knew they were inaccurate, therefore it could not claim that it relied on the false statements; and *In re Gibson,* 1 B.C.D. 449 (S.D. Ohio 1974) where the creditor told debtor that it could make the account current by making a small minimum payment, therefore creditor was only entitled to that amount in damages because payment of that amount would restore the debtor to good standing. But see, *In re Reinhart, supra,* in which it was held that a bank's negligence in handling debtor's application and raising his credit limit would not absolve debtor's wrongdoing; debt held non-dischargeable.

Pranges actually and reasonably relied on Schnore's implied representation that he could and would pay for his credit card purchases in allowing him to make those purchases. Its actual reliance on Schnore's representation that he would pay for the goods is evidenced by the fact that the purchased goods were delivered to him on credit. The reasonableness of this reliance is supported by the fact that Schnore had a Pranges credit card for the previous five years and had remained current on his obligations. There is nothing in the record to indicate that Pranges in any way waived or was unreasonable in its expectation that it would be paid by Schnore.

I find that the debt of $3,467.54 owed by Schnore to Pranges is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). When he incurred the debt by purchasing goods on credit, Schnore implicitly represented that he could and would repay it. He did not believe or intend that he would repay the debt. Pranges relied on this representation to its detriment when it allowed Schnore to purchase the goods on credit. I conclude as a matter of law that the debt of $3,467.54 to Pranges of Schnore is not dischargeable. Judgment may be entered accordingly.