In re Clifford H. SAUER, Jennifer A. Sauer d/b/a C & J Dairy Equipment, Debtors.

QUALITY PLUMBING & HEATING CO., INC., Plaintiff,

v.

Clifford H. SAUER and Jennifer A. Sauer, d/b/a C & J Dairy Equipment, Defendants.

Bankruptcy No. 79–01371.
Adv. No. 80–0029.

United States Bankruptcy Court, W.D. Wisconsin.

April 9, 1984.

Roger Sage, Clintonville, Wis., for plaintiff.

Peter P. Karoblis, Wausau, Wis., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DETERMINING DEBT DISCHARGEABLE

WILLIAM H. FRAWLEY, Bankruptcy Judge.

Quality Plumbing & Heating Co., Inc., by Attorney Roger Sage of Lauer & Meyer, having filed a Complaint seeking a determination of the dischargeability of a debt; and the Debtors, by Attorney Robert P. Dean, then of Fredel & Dean, S.C., having filed an Answer; and the matter coming on for trial before the Court; and the Complainant being represented by its attorney; and the Debtors being represented by Peter P. Karoblis of Greenheck & Karoblis; and the Court having heard the evidence and the arguments of counsel and considered the briefs submitted and the complete record and file herein, and being fully advised in the premises, FINDS:

1. That, on November 9, 1979, the Debtors, Clifford H. and Jennifer A. Sauer, filed a petition for relief under Chapter 7 of the Bankruptcy Code.

2. That the Debtors, doing business as C & J Dairy Equipment, were the owners and operators of a "DeLaval" dairy equipment and service dealership.

3. That, in 1979, the Debtors were having difficulty obtaining DeLaval parts.[1]

4. That, in August 1979, the Debtors needed DeLaval parts for pending contracts (said contracts were subsequently cancelled) and learned that the Complainant, a DeLaval dealer, might be able to provide the necessary parts.

5. That, on August 31, 1979, the Debtors contacted Quality for the first time and purchased $608.44 of equipment and materials. And that the Debtors paid for said purchase by check.

6. That, on September 11, 1979, the Debtors purchased a $38.12 piece of equipment from Quality. And that, although the matter was not discussed, the Debtors purchased said equipment on credit.

7. That, on September 18, 1979, the Debtors purchased $453.48 of equipment and postage from Quality. And that, at the Debtors' behest, the Debtors purchased said equipment and postage on credit.

8. That, on October 4, 1979, the Debtors purchased $1,094.45 of equipment and materials from Quality. And that, at the Debtors' behest, the Debtors purchased said equipment and materials on credit.

9. That, at or about the same time, the Debtors learned that, due to an error by their accountant, they were in arrears on some $9,000 in state and federal taxes.

10. That, on or about October 20, 1979, the Debtors contacted Attorney Robert P. Dean regarding their tax problem.

11. That, after reviewing the Debtors financial condition, Attorney Dean recommended that they consider bankruptcy.

12. That, on November 9, 1979, the Debtors listed assets of approximately $77,000 and liabilities of approximately $138,000 on their bankruptcy petition. And that the Debtors did not list the items purchased from Quality as assets on said petition.

---

1. On page 5 of its Brief in Support of Objection to Discharge, Quality argues that (emphasis added): "[g]iven the large amount that the defendants owed to other merchandise suppliers, and the fact that the debtors had never before previously contacted the plaintiff for DeLaval supplies, it is *reasonable to conclude* that the debtors obtained merchandise from the plaintiff because they had reached their credit limit with other DeLaval suppliers." However, Quality has not presented clear and convincing evidence, *see infra* Paragraph 16, to rebut the Debtors' testimony that the shortage of DeLaval parts was due to production or import problems experienced by the Swedish manufacturer.

13. That the parties have stipulated to the following schedule of the Debtors' secured and unsecured debts:

| Date | Unsecured | Secured |
|------|-----------|---------|
| 8–31–79 | 83,600 | 44,100 |
| 9–18–79 | 86,800 | 44,100 |
| 10–4–79 | 88,100 | 44,100 |
| 10–24–79 | 93,800 | 44,100 |

*Discussion*

14. That sec. 523 provides, in pertinent part:

(a) a discharge ... does not discharge an individual debtor from any debt—

(2) for obtaining ... property ..., by—

(A) false pretenses, false representation or actual fraud ...

■ 15. That a debt is not dischargeable under sec. 523(a)(2)(A) only when the following elements were present at the time the debt was incurred:

(1) the debtor made representations which he knew to be false or made with reckless disregard for the truth;

(2) the representations were made to deceive;

(3) the creditor actually and reasonably relied on the representations.

*In re Schnore*, 13 B.R. 249, 252 (Bankr.W. D.Wis.1981) (outlining *Carini v. Matera*, 592 F.2d 378, 380–1 (7th Cir.1979)).

16. That the party objecting to dischargeability must show all three of the *Schnore* elements with clear and convincing evidence. *In re Brink*, 27 B.R. 377, 378 (Bankr.W.D.Wis.1983).

17. That, to satisfy the first *Schnore* element, Quality must show (1) that the Debtors made purchases on credit (2) for which they were inable or unwilling to pay.[2] *See In re Schnore, supra* Paragraph 15, at 254.

18. *Credit Purchase.* That Quality has shown that the Debtors made purchases on credit.

19. *Inability to Repay.* That this Court, in dictum, has suggested that proof of technical insolvency, *i.e.*, debtor's liabilities exceed assets, is proof of an inability to repay. *Id.* at 255. However, a review of this Court's published decisions reveals that proof of actual insolvency, *i.e.*, debtor's inability to pay debts as they come due, is required to show an inability to repay. *See id.* at 250 (prior to incurring the litigated debt, the debtor had "defaulted on a number of obligations"), *In re Dyer*, 4 B.C.D. 180, 182 (Bankr.W.D.Wis. 1978) (under Bankruptcy Act of 1898 sec. 17a(2) (repealed): bankrupts "must at last have realized ... that they could not pay for future purchases."); *cf. In re Goff*, 17 B.R. 564, 568 (Bankr.W.D.Ky.1982) (citing Wisconsin cases: "... debtor is so hopelessly insolvent that repayment is impossible.").

20. That Quality has not presented clear and convincing evidence that the Debtors' business was other than a viable—albeit marginal—operation or that, at any time prior to the discovery of the unexpected tax liability, the debtors were unable to pay their debts as they came due.

■ 21. *Unwillingness to Repay.* That proof of purchases which, by their nature, indicate that the debtor did not intend to pay for them is proof of an unwillingness to repay.

22. That credit card "shopping spree" cases, *see, e.g., In re Ciavarelli*, 16 B.R. 369 (Bankr.E.D.Pa.1982), involving unusual credit purchases of consumer goods, are applicable to the case at bar by analogy only.

23. That, to the extent that "shopping spree" cases are relevant, Quality has not presented clear and convincing evidence that the 3.5% increase in the Debtors' total indebtedness during the period between the first Quality purchase and the last Quality purchase was other than a normal fluctuation in the Debtor's business. Nor has Quality shown that the Debtors' purchases

---

**2.** To the extent that a court is willing to infer intent from knowing or reckless misrepresentation, *In re Schnore, supra* Paragraph 15, proof of the second part of the first *Schnore* element is also proof of the second *Schnore* element.

during said period were out of the ordinary course of the Debtors' business.

■ 24. That, in the absence of creditor inquiry, a debtor's failure to account for items purchased prior to bankruptcy is not evidence to prove an unwillingness to repay. *Cf. In re Holcombe,* 23 B.R. 590, 592 (Bankr.E.D.Tenn.1982) (the debtor "had ample opportunity to explain the transactions ...").

25. That, accordingly, the Debtors' failure to account for the proceeds of the Quality purchases, raised for the first time in Quality's post-trial brief, will not be considered by this Court.

26. That the Court need not reach the issues raised under the second and third *Schnore* elements.

*Attorneys Fees*

■ 27. That 11 U.S.C. sec. 523 (1982) provides, in pertinent part:

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable.

And that 11 U.S.C. sec. 101 (1982) provides, in pertinent part:

(7) "consumer debt" means debt incurred by an individual primarily for a personal, family, or household purpose;

28. That, as the debt-at-bar was incurred primarily for a business purpose, the Debtors' request for attorneys fees in this matter is without merit.

## CONCLUSIONS OF LAW

■ 1. That Quality has not presented clear and convincing evidence that the Debtors made knowing or reckless misrepresentations at the time the Quality purchases were made.

2. That the debt owed by the Debtors to Quality should be found dischargeable.

ORDER

IT IS ORDERED that the debt owed by Clifford H. and Jennifer A. Sauer to Quality Plumbing & Heating Co., Inc., should be, and the same hereby is, dischargeable.