In re Clinton James WHITE, d/b/a Roil Energy, Fi–Foil, Debtor.

The INTERFINANCIAL CORPORATION, a Delaware corporation, and Robert G. Drummond, Trustee, Plaintiffs,

v.

Clinton J. WHITE, and Shirley J. White, Defendants.

Bankruptcy No. 89–50488–007.

Adv. No. 289/0069.

Cause No. CV–87–183–M–CCL.

United States Bankruptcy Court, D. Montana.

Aug. 22, 1991.

Keith Tokerud, Scott & Tokerud, Great Falls, Mont., for trustee and The Interfinancial Corp.

William E. Hileman, Jr., Hedman, Hileman & Lacosta, Whitefish, Mont., for Clinton J. White.

Dexter L. Delaney, P.C., Mulroney, Delaney & Scott, Missoula, Mont., for Shirley J. White.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Adversary Proceeding, Plaintiff Interfinancial Corporation objects to a discharge for this Chapter 7 Debtor under 11 U.S.C. § 523(a)(2)(A) and § 727, and Plaintiff Chapter 7 Trustee seeks to have certain transfers from the Debtor to his wife Shirley, a co-Defendant, declared fraudulent under 11 U.S.C. § 547 and § 548. Trial was held at Butte on June 5, 1991. Testimony was heard and exhibits admitted into evidence. Objection to certain exhibits and motions were taken under advisement. At the close of trial, the parties were granted additional time to submit briefs and proposed findings. Those having now been received by this Court, the matter is deemed submitted and is now ripe for decision. I find for the Defendants and order that Plaintiff's Complaint be dismissed.

This Adversary Proceeding presents four main issues:

1. Whether or not Plaintiff's claims are barred by the Montana statute of limitations for fraud claims;

2. Whether or not it is proper to grant Plaintiff's FED.R.CIV.P. 15(b) Motion to Amend Pleadings to Conform to the Evidence;

3. Whether Debtor's conduct constitutes sufficient fraud to sustain objections to discharge for false pretenses and failure to maintain records under § 523 and § 727; and

4. Whether transfers between the Defendant/Debtor and his wife should be set aside as fraudulent to creditors.

Defendants Clinton (Debtor) and Shirley White are husband and wife, and residents of Polson, Montana. Debtor's previous business experience includes involvement in several real estate developments and management of two credit bureaus. In June 1981, in satisfaction of a pre-existing $3,000 obligation, Debtor acquired Roil Energy Corp., Inc. (Roil) from Val Holms (Holms). Holms had incorporated Roil in April of 1979. Roil did no business and was not capitalized at that time.

Also in June 1981, Debtor negotiated and signed as President of Roil a "farm-out" agreement with Pennzoil Corporation whereby Roil, in its first business venture, was to drill an oil well on a Montana leasehold in Richland County owned by Pennzoil. Roil was to bear all risk, cost, and expense of drilling the well in exchange for royalties in the event the well actually produced oil. Roil then entered into an agreement negotiated by Holms with Drilcon, Inc., (Drilcon) under the terms of which Roil was to pay Drilcon $6,500 per day to drill the well.

Roil was to pay Drilcon on a day work basis through an escrow account Roil was to arrange. Drilcon had requested an escrow arrangement because it was unfamiliar with Roil. The first escrow company withdrew so Holms arranged to have Sun Escrow Company (Sun) of Palm Springs, California replace the first escrow company. Holms and Sun fraudulently represented to Drilcon that funds were on deposit and available for Drilcon's withdrawal. After receiving similar assurances from Holms and Sun, Debtor signed the original drilling contract on August 17, 1981 in his capacity as President of Roil.

Drilling operations commenced on August 28, 1981. On September 21, 1981, Drilcon learned that the escrow had not been funded and ceased drilling operations two days later, having drilled to a depth of

7,700 feet. By way of assurances, Holms gave Drilcon a financial statement listing his net worth at over $2.6 million, a security interest in certain oil properties, and a telegram personally guaranteeing the cost of drilling on behalf of himself and Debtor.

At the time Holms gave these assurances, he no longer had an interest in the oil properties and had a negative net worth. Holms signed the personal guarantee telegram as a vice-president of Roil, a representation he made to others also. Upon learning of the personal guarantees, Debtor informed Drilcon that Holms had no right to involve Debtor in personal guarantees on any notes or any payments. Debtor did not inform Drilcon that Holms was not a vice-president of Roil.

Armed with these assurances, Drilcon resumed drilling in late September 1981. The well was completed in December 1981, at which time drill stem tests indicated that the well would not produce oil. At that time, Roil defaulted on its obligations, then amounting to $809,023.20.

Drilcon brought an action against Roil in Texas on January 8, 1982, and obtained a default judgment for contract damages. Drilcon also obtained judgments against Holms and Sun, prompting both to file bankruptcy. Sun settled with Drilcon for $170,000. Drilcon has collected nothing from Holms, who has disappeared. Drilcon then brought an action in the District Court of the Eleventh Judicial District of the State of Montana at Flathead County, Cause No. DV–83–181, on August 13, 1982. Debtor was served as President of Roil on August 21, 1982.

The jury found in favor of Drilcon, specifically finding Debtor liable for constructive fraud, negligence, and breach of contract, and awarded damages. The judgment was filed February 3, 1987 and was affirmed January 19, 1988 by the Montana Supreme Court in *Drilcon, Inc. v. Roil Energy Corp., Inc.*, 230 Mont. 166, 749 P.2d 1058, 1066 (1988). Debtor filed a Chapter 7 Bankruptcy Petition on April 18, 1989. The Plaintiff Interfinancial Corporation (Interfinancial), successor to Drilcon, filed this Adversary Proceeding on July 10, 1989. The Chapter 7 Trustee was ultimately substituted as party Plaintiff to the fraudulent conveyance claim.

Prior to the agreement between Drilcon and Roil, Defendants had accumulated a number of real and personal property interests which existed in 1982 in several Montana counties. In early 1982, Debtor was suffering from numerous health problems, including high blood pressure, arthritis, hypertension, loss of one kidney and excess weight. Debtor's physician, Dr. Earl Coriell of Polson, testified that he had advised Debtor in a letter (Defendant's Exhibit B) that his medical problems "are significant health risks, and have a strong bearing on longevity." Dr. Coriell testified that it was rare for him to write such a letter and that he further advised Debtor to "get his affairs in order." This testimony was uncontroverted.

Consequently, as an estate planning vehicle on the advice of his doctor and attorney, Debtor began to assign his interest in various real estate holdings and contracts to his wife, Shirley, also a Defendant in this Adversary Proceeding. There was no consideration paid by Shirley other than the promise to care for Debtor for the remainder of his life. The assignments began on July 5, 1982, more than one month prior to Drilcon's filing of their action in Montana District Court, and continued in the years 1983, 1985, 1986, and 1987. The assignments were admitted into evidence at trial and are incorporated into this opinion by reference.

## I.

■ Defendants resist the Complaint on the grounds that the two (2) year statute of limitations for fraud actions in Mont.Code Ann. § 27–2–203 bars the action. The Trustee argues that the action is not barred by the Montana statute. That statute would be controlling if this case was based on a state court action. However, this case is based on a federal action. As such, the statute of limitations is set forth by federal law, specifically 11 U.S.C. § 546(a) (1991) which provides:

"An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
> (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
> (2) the time the case is closed."

Based on the clear language of § 546(a), a Trustee has two (2) years to file a § 548 action after he is appointed Trustee. In this case, the Debtor filed a Chapter 7 petition on April 18, 1989. The Trustee was subsequently appointed on April 19, 1989. As such, the two-year time limit of § 546(a) would not start running until such date. *See, In re Grambling,* 85 B.R. 675, 676 (Bankr.Conn.1988); *In re Afco Development Corp.,* 65 B.R. 781, 782–83 (Bankr. Utah 1986).

Therefore, the time prescribed under § 546(a) had not expired until the end of April 19, 1991. On that date Trustee filed a Motion of Bankruptcy Trustee and the Interfinancial Corporation to Substitute Trustee as Plaintiff in the fraudulent conveyance action Cause No. CV–87–183–M–CCL, which had been transferred from United States District Court to this Court, as well as a Motion of Bankruptcy Trustee to Consolidate Fraudulent Conveyance Suit With Adversary Complaint. Federal Bankruptcy Rule 9006(a) provides:
> In computing any period of time prescribed or allowed by these rules, by the local rules, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included. . . .

■ Applying this rule to the facts, the date of Trustee's appointment is not included in the two-year period. Trustee filed within the two-year period, so that the Trustee's action is timely for purposes of the statute of limitations.

## II.

■ The second issue is Plaintiff's FED. R.CIV.P. 15(b) Motion to Amend Pleadings to Conform to Evidence. Rule 15(b) provides that:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The original complaint filed by Interfinancial was dismissed on August 30, 1989 as to Count I (fraudulent conveyance) for lack of standing, since § 547 and § 548 confer powers solely on the Trustee in a Chapter 7 case. *National Finance Credit Corp. of Texas v. McNeill,* 9 Mont.B.R. 368, 370 (Bankr.1991). This Adversary Proceeding was consolidated with Cause No. CV–87–183–M–CCL, and the Trustee substituted as Plaintiff by Order of this Court on April 22, 1991. Another Order dated the same day denied Plaintiff's Motion to File an Amended Complaint on the grounds the Adversary Complaint already covered all of the transferred property.

Count I of the Adversary Complaint lists as exhibits all of the alleged transfers of property and all are incorporated by reference at the beginning of Counts II and III of the Adversary Complaint, which covers objections to discharge. Thus, Defendants had notice of all alleged transfers of property and Plaintiff's Rule 15(b) Motion is well taken and granted. Defendants' arguments go only to preferences and the stat-

ute of limitations defense, which are discussed above and in the *McNeill* case.

Defendants objected to certain exhibits at trial on the grounds they were each an additional cause of action not in the pleadings. I find that the presentation of the merits of the action will be served by allowing the pleadings to be amended to conform to the evidence. I also find that the Defendants failed to satisfy this Court that the admission of the exhibits would prejudice the Defendants in maintaining their defense upon the merits. Finally, Defendants failed to move for a continuance to enable the Defendants to meet the evidence. Obviously, the Defendants were not surprised by the claim that all transfers were alleged to be fraudulent.

### III.

### A.

The main issues in this case involve Plaintiffs' objections to discharge and fraudulent transfers. The United States Supreme Court recently clarified the law on standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) and on the collateral estoppel effect of prior judgments in dischargeability proceedings. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Court held that the standard of proof for the dischargeability exceptions in § 523(a) is the ordinary preponderance-of-the-evidence standard, and reversed the Court of Appeals for the Eighth Circuit's use of the "clear and convincing" standard. *Id.*, 111 S.Ct. at 661.

The Court also clarified that collateral estoppel principles indeed apply in discharge exception proceedings pursuant to § 523(a): "In sum, if nondischargeability must be proved only by a preponderance of the evidence, all creditors who have secured fraud judgments, *the elements of which are the same as those of the fraud discharge exception*, will be exempt from discharge under collateral estoppel principles." *Id.* 111 S.Ct. at 658, 659.

As is discussed below, since the jury in the District Court of the Montana, Eleventh Judicial District, Cause No. DV–83–181 found only constructive fraud, not actual fraud, by Debtor, I hold that collateral estoppel does not apply to this Adversary Proceeding under *Grogan* because the elements of constructive fraud are not the same as those of the fraud discharge exception.

The jury in Cause No. DV–83–181 found Debtor "guilty of negligence and constructive fraud," not actual fraud. Plaintiff's Exhibit 57 at 1. The Montana Supreme Court affirmed on appeal, but only after finding "special circumstances" which constituted an exception to the rule that "[c]onstructive fraud is a breach of fiduciary duty. (Citation omitted.) If there is no fiduciary duty in the first place, constructive fraud will not lie." *Drilcon*, 749 P.2d at 1061 (Citing *Rowland v. Klies*, 223 Mont. 360, 726 P.2d 310, 316 (1986)).

The "special circumstances" the Montana Supreme Court found to invoke the exception were: Debtor's use of an improperly perfected corporate entity as a shield from personal liability and his failure to disclose the imperfections to his creditors; Debtor's failure to come forward with the truth about Holms' financial affairs when Debtor knew that Drilcon was relying on Holms' personal guarantee; and Debtor's failure to inform Drilcon that Holms was not a corporate officer. 749 P.2d at 1062. These "special circumstances" and Debtor's subsequent transfers to his co-Defendant wife are not sufficient to satisfy the Ninth Circuit test for actual fraud set forth below.

Later in the discussion of piercing the corporate veil, the Montana Supreme Court stated, "we find that there was also substantial credible evidence of actual fraud, constructive fraud, and of White's using the corporate entity to justify wrong." *Id.*, 749 P.2d at 1064. The Court went beyond the constructive fraud that the jury found. I consider the statement of actual fraud as dicta, and not binding on this Court. Referring to Holms' conduct, the Supreme Court noted, "Holms acted as Roil's agent when he committed fraud against Drilcon." *Id.* In sum, the issue of actual fraud was never litigated in the state court case as

Drilcon proved, and the jury found only constructive fraud.

In the Ninth Circuit, a creditor must prove the following five elements to prevail under § 523(a)(2)(A):

(1) The debtor made the representations;

(2) That at the time he knew they were false;

(3) That he made them with the intention and purpose of deceiving the creditor;

(4) That the creditor relied on such representations;

(5) That the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978); *In re Cady,* 7 Mont.B.R. 365, 366 (Bankr.Mont.1989).

To succeed on its claim of nondischargeability pursuant to § 523(a)(2)(A), it is necessary for Plaintiff to prove each and every element of the test set forth above. The first prong of the test requires proof by a preponderance of the evidence that Defendant made a representation in the transaction with Drilcon.

■ Representations have been typically categorized as either express representations or implied representations. *In re Union Bank of the Middle East, Ltd.,* 127 B.R. 514, 518 (E.D.N.Y.1991). As stated in *Matter of Newmark,* "A false representation is an express misrepresentation, while a false pretense refers to an implied misrepresentation of 'conduct intended to create and foster a false impression.'" 20 B.R. 842, 854 (Bankr.E.D.N.Y.1982) (quoting *In re Schnore,* 13 B.R. 249, 251 (Bankr. W.D.Wis.1981)). Due to the "conceptual difficulty attending such a fine differentiation," courts typically do not differentiate between the two phrases. *Id.* (citing *In re Schnore,* 13 B.R. at 252).

Plaintiff does not assert nor does the evidence show that Defendant/Debtor committed any express misrepresentation. At trial in the District Court of the Eleventh Judicial District of the State of Montana, No. DV–83–181, the jury found only constructive fraud, not actual fraud by Clinton White. The distinction between the two kinds of fraud is fatal to the Plaintiff's claim.

Implied fraud rather than being identical with constructive fraud is a species of actual fraud. Actual fraud may consist in either express or implied misrepresentations. [Express] fraud consists in deception practiced through representations. Implied fraud consists in deception practiced through representations implied from conduct as distinguished from representations expressly made. *Stern v. National City Co.,* 25 F.Supp. 948, 957 (D.Minn.1938)

*Newmark,* 20 B.R. at 854.

■ Fraud is never "presumed," but an actionable misrepresentation may be inferred from a Debtor's conduct. *Newmark,* 20 B.R. at 856. Silence by the Debtor regarding a material fact can constitute a false representation actionable under § 523(a)(2)(A). *Id.; In re Balzano,* 127 B.R. 524, 530 (Bankr.E.D.N.Y.1991). Fraud may also consist of concealment or intentional non-disclosure of a material fact. *In re Schmidt,* 70 B.R. 634, 640 (Bankr.N.D.Ind.1986) (other citations omitted). In one case, a court found a Debtor's act of presenting checks for discounting was an implied representation that the checks were third party checks and that the representation was actionable and sufficient to satisfy the first prong of the five-prong test. *Union Bank,* 127 B.R. at 518.

■ Debtor's failures to disclose did not go so far. However, even assuming they did satisfy the first prong of the test, they surely fail the third prong, reliance. I find no reliance by Plaintiff on Debtor's failure to disclose, and even were I to so find reliance, it was not reasonable. As stated in *In re Mullet,* 817 F.2d 677, 679 (10th Cir.1987):

Section 523(a)(2) is the successor to § 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), and it only slightly modified § 17(a)(2). S.Rep. No. 95–989, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5864. "Cases interpreting section 17(a)(2) developed two judicial

glosses. First, because direct proof of actual reliance is difficult, actual reliance may be proven by circumstantial evidence of reliance. Second, actual reliance must be reasonable." *In re Kreps*, 700 F.2d 372, 375 (7th Cir.1983) (citations omitted). Section 17(a)(2) thus required a finding that the creditor actually relied upon the false representations, "[a]nd of course such reliance must be reasonable." *Carini v. Matera*, 592 F.2d 378, 381 (7th Cir.1979) (dealing with false representations other than written statements regarding financial condition).

We conclude that this standard of reasonableness required under § 17(a)(2) should continue to be imposed on claimed reliance pertaining to § 523(a)(2)(A).

Other Bankruptcy Courts in the Ninth Circuit have adopted this language and held that reasonableness of reliance is an element which must be established to render a debt non-dischargeable under § 523(a)(2)(A). *In re Howarter*, 95 B.R. 180, 191 (Bankr.S.D.Cal.1989). The Bankruptcy Appellate Panel (BAP) stated in affirming *Howarter*: "In that regard we hold that by referring to 'false pretenses, a false representation or actual fraud' (all common law causes of action), subsection A incorporates the elements of proof required by the common law, one of these elements being reasonable reliance as indicated by *In re Rubin* [875 F.2d 755, (9th Cir.1989)], supra. See also *Mullet*, 817 F.2d at 679–80...." *In re Howarter*, 114 B.R. 682, 685 (9th Cir.BAP 1990).

In *Balzano*, a Plaintiff unreasonably relied on Defendant's silence as to the scope of his gambling problem, with the result that her claim for nondischargeability failed:

Plaintiff contends that Defendant intentionally concealed the fact he was a gambler, and that had she known of his gambling problem, she would not have refinanced her home and loaned him money. It is true that debtor's silence regarding a material fact can constitute a false representation actionable under § 523(a)(2)(A). However, Plaintiff's professed complete unawareness of Defendant's gambling is highly dubious. Although Defendant did not bare in full the nature and extent of his gambling proclivities, Plaintiff was made aware by Defendant early in their relationship that he had gambling debts. She ignored these red flags or warning signals. Having failed to probe further upon learning of the existence of gambling debts, Plaintiff's reliance upon Defendant's silence, as to the scope of his gambling problem, was not reasonable.

127 B.R. at 530.

The present case demonstrates a similar unreasonable reliance upon Debtor's silence of the true nature of Drilcon's relationship with Val Holms. Plaintiff only took Holms' financial statement and relied on it to resume drilling. Given that the financial statement was false, there is no evidence that Debtor ever saw it or prepared it. In fact, Debtor told Plaintiff that Holms could not talk for Debtor. The following testimony of the then-President of Drilcon at the trial in Montana District Court is compelling on this issue.

Q. Tell the Jury about that telephone call. First of all, when was it, if you recall?

A. It was around the 20th of November. I talked to Mr. Clinton White about the payment on these things—and the possibility that Val Holms, with this guaranty that he made. He told me on the phone that Val Holms has no right to involve him in making any personal guaranties on any notes or any payments.

Q. Was there any discussion about Mr. Clinton White giving his own personal guaranties?

A. No. I asked him what should we do then. And he said, "You go and talk to Val Holms." So I called Val Holms, and he must have called Val Holms, and Val Holms just assured me everything would be okay. I assumed there would be no problem at that point.

Q. Did Mr. Clinton White ever tell you he would not give his personal guaranty?

A. I don't recall him ever saying that. The only thing I ever remember him saying was that Val Holms was not authorized to speak on his behalf.

Plaintiff's Exhibit 58 at 342.

After an exchange such as this, Plaintiff should have been aware that Holms could not speak for Debtor and should have exercised caution in its dealings with Roil. Plaintiff's reliance on Debtor's silence and Holms' assurances under the circumstances was not reasonable.

■ A Debtor who has made no false representations may be bound by the fraud of another if a Debtor is a knowing and active participant in the scheme to defraud. *In re Buck*, 75 B.R. 417, 420–21 (Bankr. N.D.Cal.1987); 3 Collier on Bankruptcy (MB) ¶ 523.08[4], p. 523–49 (15th Ed.); *Amen v. Black*, 234 F.2d 12 (10th Cir.1956); *Matter of Newmark*, 20 B.R. 842, 857 (Bankr.E.D.N.Y.1982).

■ Collier also states, "[a] debtor who has made no false representation himself may, nevertheless, be bound by the fraud of an agent acting within the scope of his authority." 3 Collier on Bankruptcy (MB) ¶ 523.08[4], p. 523–46 (15th Ed.); *Newmark*, 20 B.R. at 857. Further, it is a "universally accepted rule" that "a principal is liable for the frauds and misrepresentations of his agent within the scope of his authority or employment even though he had no knowledge of such representations" *Newmark*, 20 B.R. at 857 (quoting *Amen v. Black*, 234 F.2d 12, 20 (10th Cir 1956)).

Plaintiff would use this language to hold Debtor liable for the fraudulent acts of Holms. The testimony quoted above clearly shows that Debtor gave Plaintiff notice that Holms was acting outside the scope of his authority when he attempted to bind Debtor with the personal guarantee telegram. Plaintiff's subsequent reliance on Holms' assurances was at its own peril.

In *In re Mullet*, a bank's reliance "is so unreasonable under the circumstances ... does not constitute reliance at all." 817

F.2d 677, 678. (10th Cir.1987) There, the bank loaned $86,000 to a 23 year-old debtor who later defaulted. *Id.*

Mullet was a new, young, unproven customer of the bank, there were inconsistencies in his representations, minimal investigation and verification almost certainly would have uncovered the falsity of the representations, and the lack of verification cited to by Mullet occurred prior to the granting of the loan. We thus conclude that the bankruptcy court's finding of no reasonable reliance on the part of the bank is not clearly erroneous.

*Id.* at 681.

This language adapts readily to the facts of the present proceeding. This was Roil's first business transaction. Drilcon began drilling without verifying that there was money in the escrow. After halting, they resumed drilling without verifying that there was money in the escrow, except for Holms' assurances, which had proved wrong before. Drilcon did not verify Holms' financial statement, which Debtor had nothing to do with preparing, and did not investigate what Holms' authority was even after Debtor informed them that he had no authority to bind Debtor to a personal guarantee. Edward White, Plaintiff's employee, testified for the Plaintiff that they did not even go so far as to call a credit bureau to check on Val Holms' financial status. Like the bank in *Mullet*, Plaintiff's reliance under these circumstances was such unreasonably reckless wishful thinking as to constitute no reliance at all.

Accordingly, for all the foregoing reasons, I find that Plaintiff has failed to meet its burden in establishing that the debt owed to him by Defendant is non-dischargeable under 11 U.S.C. § 523.

**B.**

■ Plaintiff next seeks to void the following transfers from Debtor to Shirley as fraudulent transfers:

JULY 5, 1982

| DATE | SELLER | | | ASSIGNEE | CONTRACT PURCHASER —PROPERTY |
|------|--------|---|--------|----------|------------------------------|
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Riverside |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Stoneman |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Godfrey |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Phipps |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Granite County |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Shriver |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Howell |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Szymanski |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Hatch |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Guckenberg |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Stillman |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Gunlock |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Doss |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Semenza |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Grovom |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Dorrance |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Nelson |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Nelson |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Catzler |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Peterson |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Peterson |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Morris |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | James Building |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | Eagles Building |
| July 5, 1982 | Clint White | & | Shirley | Shirley White | White Office |

Plaintiff alleges Debtor backdated certain of these assignments of contract for deed from Debtor to Shirley White from 1983 to 1982. At trial the Notary, Keith Johnson, testified that he, not Debtor, made the changes on the assignment dates from 1983 to 1982. Johnson admitted being a friend and previous business partner of Debtor. Nevertheless, having observed the demeanor of the witness while testifying, I find that his testimony that he, not Debtor, made the changes in the dates is credible.

### TRANSFERS IN 1983

| SELLER | ASSIGNEE | PROPERTY OR PURCHASER |
|---|---|---|
| Clinton & Shirley White | Shirley J. White | MacDonald |
| Clinton & Shirley White | Shirley J. White | J. Green |
| Clinton & Shirley White | Shirley J. White | M. Green |
| Clinton & Shirley White | Shirley J. White | Dwello J. Gran |
| Clinton & Shirley White | Shirley J. White | J. Gran |
| Clinton & Shirley White | Shirley J. White | J. Gran |
| Clinton & Shirley White | Shirley J. White | White's Residence |

### TRANSFERS IN 1985

| SELLER | ASSIGNEE | PROPERTY OR PURCHASER |
|---|---|---|
| Clinton & Shirley White | Shirley J. White | 1123 4th Ave. N.W. Great Falls, MT |

### TRANSFERS IN 1986

| SELLER | ASSIGNEE | PROPERTY OR PURCHASER |
|---|---|---|
| Clinton & Shirley White | Shirley J. White | Etheridge |
| Clinton & Shirley White | Shirley J. White | Songer |
| Clinton & Shirley White | Shirley J. White | Various Bank Account & Personal Property |

### TRANSFERS IN 1987

| SELLER | ASSIGNEE | PROPERTY OR PURCHASER |
|---|---|---|
| Clinton & Shirley White | Shirley J. White | McLean |
| Clinton & Shirley White | Shirley J. White | Silber |
| Clinton & Shirley White | Shirley J. White | R. Milton & G. Milton |

Debtor testified that all the transfers to his wife were for "estate planning consideration" with the understanding that Shirley would take care of Debtor for the rest of his life. The issue is whether such estate planning consideration is sufficient to avoid being one of the "badges of fraud" set forth in *O'Connor v. Lewis*, 238 Mont. 270, 776 P.2d 1228, 1232–33 (1989), where the Montana Supreme Court summarized the criteria for actual fraud under § 31–2–314 as follows:

O'Connor correctly notes that actual fraudulent intent may be established by circumstantial evidence. *Montana Nat'l. Bank v. Michels*, (Mont.1981), 631 P.2d 1260, 1262–63, 38 St.Rep. 334, 337. O'Connor then relies upon the "badges of fraud," which this Court has previously applied when determining whether a conveyance is fraudulent and therefore whether it should be set aside. These "badges of fraud" include lack of consideration for the conveyance, transfer of the debtor's estate, relationship between transferor and transferee, pendency or threat of litigation, secrecy or hurried transaction, insolvency or indebtedness of the transferor, departure from the usual method of business, the retention by the debtor of possession of the property, and the reservation of benefit to the

transferor. *Montana Nat'l Bank*, 631 P.2d at 1263, 38 St.Rep. at 337. However, we must emphasize that these 'badges of fraud,' if found, do not necessarily constitute fraud per se, but instead merely afford grounds of inference from which the court or jury are authorized to conclude that a transaction surrounded by them is fraudulent. *Montana Nat'l Bank*, 631 P.2d at 1262, 38 St.Rep. at 337 (citing *Humbird v. Arnet*, (1935), 99 Mont. 499, 512, 44 P.2d 756, 761.

Certain "badges of fraud" are present here. There was a transfer of virtually all of Debtor's estate to his wife. There was pending litigation during many of the transfers, but not against the Debtor until the corporate veil was pierced in the state court action. Debtor did retain the benefits of the properties. On the other hand, both Debtor and Shirley testified that they believed on the advice of counsel that the corporation would shield them from personal liability. The transfers occurred over a period of years rather than being hurried.

I fail to see intent to defraud on the part of the Debtor. His doctor told him to get his affairs in order. The first transfers began before the initial action was filed by Drilcon. Debtor's real purpose in the transfers was to get his property in his wife's name because of his precarious health condition. I hold that estate planning purposes in the face of medical advice constitute sufficient consideration to avoid being labeled as a "badge of fraud". On balance, I find insufficient "badges of fraud" to warrant an inference that the transfers are fraudulent.

## C.

Finally, Plaintiff alleges in Count II that Debtor's debt should not be discharged under 11 U.S.C. § 727(a)(3) and (5) for failing to maintain records or failure to explain satisfactorily any loss of assets. At trial, Plaintiff offered no evidence in support of this count. Shirley White testified that she and Debtor retained life insurance and tax records. Plaintiff was able to offer numerous exhibits setting forth the transfers in

question. At the close of the Plaintiff's case-in-chief counsel for the Defendants moved for dismissal of Count II on the grounds there is no evidence to support a finding that Debtor concealed documents or failed to explain a loss of assets. Accordingly, the motion is well taken and granted. Count II is dismissed.

IT IS ORDERED:

1. Plaintiff's objections to discharge based on 11 U.S.C. § 523(a)(2)(A) are denied.

2. The Trustee's claim to set aside transfers between the Defendants is denied.

3. Judgment shall be entered for Defendants dismissing the complaint on the merits.