In re Lee BROWN and Sandra
Brown, Debtors.

BENEFICIAL CALIFORNIA,
INC., Plaintiff,

v.

Sandra BROWN, Defendant.

Bankruptcy No. 97–01793.
Adversary No. 97–90358.

United States Bankruptcy Court,
S.D. California.

March 3, 1998.

David E. McAllister, Suppa, Trucchi & Lee, San Diego, CA, for Plaintiffs.

William J. Howell, San Diego, CA, for Defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, and ORDER

JOHN L. PETERSON, Bankruptcy Judge.

Debtors Lee Brown (referred to individually as "Lee") and Sandra Brown (referred to individually as "Sandra" and referred to collectively as "Debtors") filed a voluntary Chapter 7 bankruptcy petition on February 6, 1997. On May 16, 1997, Plaintiff Beneficial California, Inc. ("Beneficial") filed an adversary complaint against Sandra seeking to except from discharge, pursuant to 11 U.S.C. § 523(a)(2), the sum of $3,031.85, plus interest at a contract rate of 25.88% per annum from December 31, 1996, along with costs and reasonable attorney's fees. Sandra filed a timely answer to Beneficial's complaint on May 28, 1997, denying several of Beneficial's allegations and requesting judgment in her

favor along with reasonable attorney's fees and costs pursuant to 11 U.S.C. § 523(d).[1]

Subsequently, after due notice, trial was held October 20, 1997, at San Diego where David McAllister appeared on behalf of Beneficial and William J. Howell appeared on behalf of Sandra. In addition. Sandra and Troy Grehalva,[2] Assistant Manager and custodian of records at Beneficial, testified and Exhibits A through D and 1 were introduced into evidence without objection. At the close of trial, the Court deemed the record closed and took the matter under submission. After considering the testimony presented at trial, and after reviewing the record and applicable law, the Court finds for Sandra.

**I**

Approximately ninety-seven days prior to the date Debtors filed their voluntary Chapter 7 bankruptcy petition. Sandra telephoned Beneficial requesting a loan in the amount of $2,500.00. Sandra gave the pertinent loan information to a Beneficial loan officer by telephone. The Beneficial loan officer then completed the appropriate documents and on November 1, 1996, Sandra stopped by Beneficial's office to pick-up her check and to also either initial or sign the already completed loan documents. The purpose of the loan, as indicated on the loan application, was "BC," or bill consolidation. In addition, the loan application indicates that Sandra had previously borrowed funds from Beneficial.

Included among the documents reviewed by Sandra was a listing of the property given as collateral for the loan, which included stereo equipment, computer equipment, a tent and four sleeping bags. Sandra estimated the combined aggregate value of the collateral at $6,100.00. Also included among the documents was a credit statement, Exhibit B, in which Sandra listed her and her spouse's assets at $201,800 and their liabilities at $228,000. Listed at the bottom of Sandra's personal information form are three vehicles, a 1995 Plymouth Voyager with the notation "lease", a 1995 Ford Ranger, and a 1996 GMC Synoma with the notation "son pays".

Debtors' bankruptcy schedules, Exhibit D, list several debts that were incurred in 1996 but not listed in Sandra's loan documents. Among the obligations excluded were: (1) $15,000 to GMAC on the 1996 Synoma; (2) $954 to the Bedroom Superstore; (3) $200 to Chevron; (4) $136 to GTE Mobilnet; (5) $625 to JC Pennys; and (6) $2,500 to Lee Sawh. Grehalva. However, testified that Beneficial was aware of the obligations to GMAC and Chevron before it loaned the funds to Sandra because such obligations appeared when Beneficial ran Sandra's credit report. Despite the obvious incompleteness of Sandra's loan documents, Beneficial nevertheless cut a check payable to Sandra and when Sandra arrived at Beneficial's office, the check was waiting. All Sandra had to do was sign the appropriate forms—which had already been completed by a Beneficial employee.

In addition to the foregoing, the Court notes that on July 7, 1997, the Court entered a Notice and Order of Pre–Trial Discovery and Trial Date which provided, in paragraph 7:

> A Pre–Trial Order shall be filed with the Clerk, with a copy to the Court, on or before October 1, 1997. Plaintiff's counsel shall be responsible for preparing the Pre–Trial Order and arranging the meeting of counsel attendant thereto.

Despite the Court's express directive, a Pretrial order was not filed until the date of trial, at which time. Beneficial filed a Unilateral Pre–Trial Order.

---

**1.** Sandra, in her answer, included a request for reimbursement of fees pursuant to 11 U.S.C. § 523(d). However, neither party raised the issue at trial. In addition, Sandra did not file a Pre–Trial Order or her Trial Brief. Thus, the Court deems the matter waived.

**2.** From Grehalva's testimony, it appears that Grehalva was employed by Beneficial at the time

Sandra obtained the loan at issue from Beneficial. However, Grehalva did not have personal knowledge regarding the specifics of Sandra's loan. For example, when Grehalva was asked what "Ken 16th,"—which was written on top of Sandra's personal statement—meant, he said he "didn't know" but thought that it "could have been a phone application."

## II

This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding for purposes of § 157(b)(2)(I). On the issue of the determination of non-dischargeability of debts, the Ninth Circuit Court of Appeals imposes a "weighty burden" on creditors, strictly construing exceptions to discharge in favor of debtors in order "to effectuate the Congressional policy" of affording debtors a "fresh start". *Gregg v. Rahm (In re Rahm)*, 641 F.2d 755, 756–57 (9th Cir.1981), *cert. denied*, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); *McCrary v. Barrack (In re Barrack)*, 201 B.R. 985, 989 (Bankr.S.D.Cal.1996). Notwithstanding the weighty burden, a creditor, in order to prevail. need only establish the elements of fraud under 11 U.S.C. § 523, by a preponderance of the evidence. *American Express Travel Related Services Co., Inc. v. Hashemi (In re Hashemi)*. 104 F.3d 1122, 1125, *cert. denied*, —— U.S. ——, 117 S.Ct. 1824, 137 L.Ed.2d 1031 (mem.) (1997); *see Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

## III

Beneficial, in its complaint, seeks to except from discharge, pursuant to 11 U.S.C. § 523(a)(2)(B), the sum of $3,031.85. At trial, Beneficial requested that the pleadings be amended, pursuant to Fed.R.B.P. 7015, to conform to the evidence to include a claim for actual fraud under 11 U.S.C. § 523(a)(2)(A).[3] Thus, the Court will first address Beneficial's actual fraud claim and will then address Beneficial's false financial statement claim.

**3.** The United States Supreme Court has summarized the differences between §§ 523(a)(2)(A) and (B) as thus.

One applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition), [523(a)(2)(A) ], the other when the debt follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied [523(a)(2)(B) ].

*Field v. Mans*, 516 U.S. 59, 66, 116 S.Ct. 437, 441–42, 133 L.Ed.2d 351 (1995).

### a. 11 U.S.C. § 523(a)(2)(A).

To establish non-dischargeability as a result of fraud under § 523(a)(2)(A)[4], courts in the Ninth Circuit employ the following five-part test:

(1) that the debtor made … representations;

(2) that the debtor knew were false when made;

(3) that the debtor made the representations with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; and

(5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*In re Hashemi*, 104 F.3d at 1125; *Apte v. Japra, M.D., F.A.C.C., Inc. (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir.1996). The determination of non-dischargeability under § 523(a)(2)(A) is a question of federal, not state law and since the elements of the § 523(a)(2)(A) test mirror the common law elements of fraud, courts must interpret these elements consistent with the common law definition of "actual fraud" as set forth in the Restatement (Second) of Torts (1976) §§ 525–557A. *Field v. Mans*, 516 U.S. 59, 69, 116 S.Ct. 437, 443–44, 133 L.Ed.2d 351 (1995) (" 'false pretenses, a false representation, or actual fraud,' … are common-law terms, and … in the case of 'actual fraud,' … they imply elements that the common law has defined them to include.").

### 1. Intent to Deceive

With regard to elements (1), (2) and (3)—which, when taken together, establish the element of intent to deceive—a creditor

**4.** 11 U.S.C. § 523(a)(2)(A) reads:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

must establish, by a preponderance of the evidence, that a debtor knowingly made a false representation, either express or implied,[5] with the intent of deceiving the creditor. Since direct proof of intent to deceive is nearly impossible to obtain, the element of intent may be inferred from proof of surrounding circumstances "if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor." *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082 (9th Cir.1996) (allowing courts to infer the existence of intent in the context of credit card fraud).

■ When determining whether a creditor has established the requisite element of intent in the context of credit card fraud, a court's inquiry must focus on a debtor's intent rather than ability to repay. *Anastas v. American Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir.1996). In *Anastas*, the Ninth Circuit Court of Appeals explained:

> [T]he focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges. A person on the verge of bankruptcy may have been brought to that point by a series of unwise financial choices, such as spending beyond his means, and if ability to repay were the focus of the fraud inquiry, too often would there be an unfounded judgment of non-dischargeability of credit card debt. Rather, the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt. A finding that a debt is non-dischargeable under 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law.

\*    \*    \*    \*    \*    \*

... the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith.

*Anastas*, 94 F.3d at 1285–86. *See also, Eashai*, 87 F.3d at 1090 ("A substantial number of bankruptcy debtors incur debts with the hopes of repaying them that could be considered unrealistic in hindsight. This by itself does not constitute fraudulent conduct warranting nondischarge.") (quoting *Karelin v. Bank of America Nat'l Trust & Sav. Ass'n (In re Karelin)*, 109 B.R. 943, 948 (9th Cir. BAP 1990)). This Court finds that such focus is equally applicable to non-credit card cases. Thus, a debtor's intent to deceive cannot be inferred solely from the fact that a debtor incurred debt during a period of time when he or she was experiencing financial difficulties.

As to the remaining elements, a creditor sustains its burden of proof under § 523(a)(2)(A), if a Court, after considering the facts and circumstances of a particular case. answers the following two inquiries in the affirmative: 1) did the creditor justifiably rely on the debtor's representation—reliance; and 2) was the debt sought to be discharged proximately caused by the first two elements—causation.

#### 2. Reliance

■ A creditor must establish that it relied on the false representations made by the debtor. *Field*, 516 U.S. at 59–60, 116 S.Ct. at 438 (1995). Such reliance need not be reasonable, but it must be justifiable. *Id.* As the Supreme Court held in *Field*, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id.* at 70, 116 S.Ct. at 444 (quoting § 540 Restatement (Second) of Torts (1976)). This standard depends upon the knowledge and experience of the person

---

5. As this Court explained in *Smith v. Young (In re Young)*, 208 B.R. 189 (Bankr.S.D.Cal.1997):

Courts typically categorize representations as either express representations or implied representations. *Interfinancial Corp. v. White (In re White)*, 130 B.R. 979, 985 (Bankr.Mont. 1991); *In re Union Bank of the Middle East, Ltd.*, 127 B.R. 514, 518 (E.D.N.Y.1991). "A false representation is an express misrepresentation, while a false pretense refers to an implied misrepresentation of 'conduct intended to create and foster a false impression.'" *Matter of Newmark*, 20 B.R. 842, 854 (Bankr. E.D.N.Y.1982) (quoting *In re Schnore*, 13 B.R. 249, 251 (Bankr.W.D.Wis.1981)). The "conceptual difficulty attending such a fine differentiation," however, leads courts to typically ignore the negligible difference between the two phrases. *Id.*

to whom the representations were made. As the Supreme Court in *Field* further explained:

> [A] person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus, a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had not experiences with horses."

*Id.* (quoting § 541, Comment a., Restatement (Second) of Torts (1976)). Interpreting this standard, the Ninth Circuit Court of Appeals teaches: "Although one cannot close his eyes and blindly rely, mere negligence in failing to discover an intentional misrepresentation is no defense for fraud." *Apte,* 96 F.3d at 1322.

### 3. Causation

■ Finally, to prevail under 11 U.S.C. § 523(a)(2)(A), a creditor must establish that a claim sought to be discharged arose from an injury proximately resulting from its reliance on a representation that was made with the intent to deceive. *Britton v. Price (In re Britton),* 950 F.2d 602, 604. "Proximate cause is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id.* at 604. Moreover, as the United States Supreme Court explained in *Field,* a court may turn to the Restatement (Second) of Torts (1976), "the most widely accepted distillation of the common law of torts" for guidance on this issue. *Field,* 516 U.S. at 68–70, 116 S.Ct. at 443.

■ The Restatement (Second) of Torts (1976) explains that proximate cause entails (1) causation in fact, which requires a defen-

dant's misrepresentations to be a substantial factor in determining the course of conduct that results in loss, § 546; and (2) legal causation, which requires a creditor's loss to "reasonably be expected to result from the reliance." § 548A. In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether and to what extent a creditor would have suffered a loss absent fraud. *Siriani v. Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. (In re Siriani),* 967 F.2d 302, 306 (9th Cir.1992).

### b. 11 U.S.C. § 523(a)(2)(B)

■ The Ninth Circuit Court of Appeal in *In re Siriani,* 967 F.2d 302, (9th Cir.1992), set forth the elements of an action based upon § 523(a)(2)(B), requiring:

(1) a representation of fact by the debtor,

(2) that was material,

(3) that the debtor knew at the time to be false,

(4) that the debtor made with the intention of deceiving the creditor,

(5) upon which the creditor relied,

(6) that the creditor's reliance was reasonable, .

(7) that damage proximately resulted from the misrepresentation.

*Siriani,* at 304. As with § 523(a)(2)(A), a creditor must prove each of the above elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. at 290, 111 S.Ct. at 661.

■ On the issue of materiality, a financial statement that leaves "any discrepancy" between the overall impression left by the statement and the endorser's true financial status gives rise to a material falsehood for the purposes of § 523(a)(2)(B). *In re Harmer,* 61 B.R. 1, 5 (Bankr.D.Utah 1984) (citing cases); *accord, Texas Am. Bank, Tyler, N.A. v. Barron, (In re Barron),* 126 B.R. 255 (Bankr.E.D.Texas 1991) (citing cases). A "long line of cases" has held that in a personal financial statement, the "omission, concealment, or understatement of any of [a] debtor's material liabilities constitutes a 'ma-

terially false' statement." *Harmer,* 61 B.R. at 5.

Moreover, even if a debtor does not know of inaccuracies contained in a written financial statement, the United States Court of Appeals for the Ninth Circuit has held that reckless disregard for the truth satisfies the knowledge element of § 523 and its predecessor. *Baker v. Duneman (In re Duneman),* 12 Mont.B.R. 253, 259 (1993) (citing *In re Houtman,* 568 F.2d 651, 656 (9th Cir. 1978)). "Gross recklessness to the truth also satisfies the fourth ... element of intention of deceiving." *Id.* (citing *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490, 492 (6th Cir.1986)).

While the United States Supreme Court in *Field* adopted justifiable reliance as the appropriate standard under § 523(a)(2)(A), Congress has expressly stated that a creditor's reliance under § 523(a)(2)(B) must be reasonable. The reasonable reliance standard differs from the justifiable standard in that the inquiry regarding the justifiable standard:

> [W]ill thus focus on whether the falsity of the representation was or should have been readily apparent to the individual to whom it was made. This is a less exacting standard than "reasonable" reliance, which would focus on whether reliance would have been reasonable to the hypothetical average person.

4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, § 523.08[1][d] (15th ed.1997).

In *Field,* the Supreme Court reasoned that the more exacting "reasonable" reliance standard in § 523(a)(2)(B) was "tied to the peculiar potential of financial statements to be misused not just by debtors, but by creditors who know their bankruptcy law." The Supreme Court completed its reasoning:

> The House Report on the Act suggests that Congress wanted to moderate the burden on individuals who submitted false financial statements, not because lies about financial condition are less blameworthy than others, but because the relative equities might be affected by practices of consumer finance companies, which sometimes have encouraged such falsity by their borrowers for the very purpose of insulating their own claims from discharge.

*Field,* 516 U.S. at 76–77, 116 S.Ct. at 447.

### IV

Applying the foregoing to the evidence at bar, the Court finds that Beneficial has not met its burden of proof under either 11 U.S.C. § 523(a)(2)(A) or § 523(a)(2)(B). Beneficial has failed, under both its claims for relief, to establish that it either justifiably relied on Sandra's representations or reasonably relied on Sandra's written financial statements.

First, Beneficial's reliance was not justifiable because the inaccuracy of Sandra's statements regarding her financial status was, as Grehalva admitted, known by Beneficial when they made the loan. Grehalva conceded that Beneficial had run a credit report on Sandra which revealed the obligation to GMAC and to Chevron. In addition, Sandra's personal statement contained the following notation "96 GMC Synoma Son Pays." These two "red flags" certainly gave Beneficial—a sophisticated lender—notice that Sandra's loan information was not complete. Thus, a lender with Beneficial's knowledge, experience and competence would not have relied on such representations that were noticeably inaccurate and incomplete. Here, Beneficial was presented with a one-eyed horse for inspection, and despite the obvious defect, forged ahead with the deal clearly establishing that Beneficial's reliance was not justifiable.

While Beneficial's reliance was not justifiable, neither was it reasonable. Any ordinary person would have recognized at once the obvious falsity of Sandra's financial statements. This case exemplifies the principal recognized by courts, including the Supreme Court:

> While the legislative history to section 523(a)(2)(B) mentions that a "creditor often has sources of information, such as credit bureau reports, to verify the accuracy of a debtor's list of debts on a financial statement," a careful reading discloses that this statement is a recognition of creditors' unprincipled practice of using forms or providing instructions that produce an incom-

plete financial picture of the debtor and then later suing the debtor claiming intentional fraud based on the debtor's signing a declaration regarding the completeness of the statement. *See* H.R .Rep. No. 95–595, at 130–31, U.S.Code Cong. & Admin.News 1978, at 6091–6092.

*Groth v. Masegian (In re Masegian),* 134 B.R. 402, 407 (Bankr.E.D.Cal.1991); *Field,* 516 U.S. at 76–77, 116 S.Ct. at 446–47.

Moreover, Beneficial, knowing the falsity of Sandra's representations and financial statements—which were prepared by a Beneficial employee—made the decision to loan the requested funds to Sandra before she signed the financial statements. This fact alone demonstrates that Beneficial's reliance was neither justifiable nor reasonable because Beneficial did not rely at all on either Sandra's representations or her financial statements.

### V

After carefully considering the facts of the instant case, the Court finds that Beneficial has not sustained its burden of proof. First, a lender with Beneficial's knowledge, experience and competence cannot rely on a statement made by a debtor when the statement is at obvious odds with that debtor's credit report. Moreover, a lender that knows of obvious omissions in a financial statement is not permitted to nonetheless proceed with its lending, only to sue the debtor at a later date claiming intentional fraud—lenders must accept some responsibility for their sometimes unprincipled practices. Finally, a lender that extends credit in a manner and under the circumstances as presented in this case, makes the decision to do so on grounds that have nothing to do with the statements or representations of the borrower. Thus, in case such as the case at bar, there is no reliance. Beneficial's Complaint, therefore, must fail. In addition, since the matter of fees, pursuant to 11 U.S.C. § 523(d) is deemed waived, each party shall bear their own costs of suit.

IT IS THEREFORE ORDERED a separate Judgment shall be entered in favor of Defendant, Sandra Brown and against Plaintiff, Beneficial California, Inc.; and the Com-

plaint to determine the dischargeability of debt filed by Beneficial California, Inc. on May 16, 1997, is dismissed with prejudice.