NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. NC-11-1652-HPaMk |
| OSCAR TREJO, | Bk. No. 10-58782 |
| Debtor. | Adv. No. 10-05392 |
| HERITAGE PACIFIC FINANCIAL, LLC, d/b/a Heritage Pacific Financial, a Texas Limited Liability Company, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| OSCAR TREJO, | |
| Appellee. | |

Argued and Submitted on October 18, 2012
at San Francisco, California

Filed - December 20, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

Appearances:     Brad A. Mokri, Law Offices of Mokri & Associates, argued for Appellant; Jennifer Bregante, Alexander Community Law Center of Santa Clara University School of Law, argued for Appellee.[2]

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] Ms. Bregante is a law student acting under the supervision of attorney Gary Neustadter.  On June 18, 2012, the BAP granted the debtor's motion requesting permission to allow Ms. Bregante to appear with Mr. Bregante and argue on behalf of Appellee.

Before: HOLLOWELL, PAPPAS, and MARKELL, Bankruptcy Judges.

Heritage Pacific Financial, LLC (Heritage) filed a complaint alleging that the debtor's loan obligation was nondischargeable under § 523(a)(2).[3]  After trial, the bankruptcy court entered judgment in favor of the debtor.  Heritage appeals.  We AFFIRM.

## I.  FACTS

On March 6, 2006, Oscar Trejo (the Debtor) applied for a loan from American Mortgage Express Financial dba Millennium Funding Group (Millennium).  Millennium was a subprime lender; it lent to borrowers with lower credit scores who represented a greater credit risk than more qualified borrowers.  The Debtor executed a promissory note in the amount of $88,802 in favor of Millennium (the Loan) on March 7, 2006.  The Loan was secured by a second mortgage on the Debtor's real property in Merced, California (the Property).  The Loan was subsequently assigned to Heritage.[4]

In order to obtain the Loan, the Debtor completed and executed a Uniform Residential Loan Application form (Loan Application).  On the Loan Application, Trejo stated his monthly income was $9,500.   The Debtor stated that he was employed by Trejo Networks, a "consulting business" that operated from the

_____

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[4] At some point after Heritage was assigned the Loan, the Property was foreclosed by the first deed of trust holder. Heritage did not receive any funds from the foreclosure sale.

Debtor's home. It was later revealed that this information about the Debtor's income and employment was not true even though the Debtor signed the Loan Application under penalty of perjury.

The Debtor provided the information about his income and employment in an interview in conjunction with completing the Loan Application. In addition, the Debtor executed a Borrower's Certification and Authorization form on March 8, 2006, which certified that the information the Debtor provided in the Loan Application was true and complete (Certification Form).

The Loan Application provided that: "Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements." The Certification Form also authorized Millennium to review the Debtor's financial information with lenders and other third parties. However, Millennium did not request any additional documentation from the Debtor, such as tax returns, earnings statements, or bank records.

On August 24, 2010, the Debtor filed a voluntary chapter 7 petition. He was not represented by an attorney.

On November 23, 2010, Heritage filed a complaint (Complaint) against the Debtor alleging that the Debtor made misrepresentations in the Loan Application, which constituted fraud, making the Loan nondischargeable under both § 523(a)(2)(A) and (B).

Heritage served Requests for Admission on the Debtor in April 2011, which requested the Debtor to admit, among other things, that he misstated his monthly income and employer on the Loan Application, and obtained the Loan through false pretenses,

false representations, and actual fraud. The Debtor did not respond to the Requests for Admission.

On May 27, 2011, Heritage filed a motion for summary judgment (MSJ). A hearing on the MSJ was held on August 25, 2011. The bankruptcy court subsequently denied the MSJ on September 8, 2011. According to the bankruptcy court, based on Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088 (9th Cir. 2009), the original lender's reliance was the key issue in the case and there was a genuine issue of fact as to whether Millennium appropriately relied on the representations made by the Debtor in the Loan Application.[5]

A trial on the Complaint was held on September 21, 2011. In a written order entered on November 2, 2011 (Order After Trial), the bankruptcy court found that Heritage failed to establish that Millennium justifiably or reasonably relied on the representations made by the Debtor in the Loan Application. Therefore, the bankruptcy court determined that Heritage failed

---

[5] In re Boyajian held that an assignee's reliance was not necessary to satisfy § 523(a)(2)(B)'s reliance element, when the assignee had already established the original lender's reasonable reliance. See id. at 1090. It did not address the question of whether, and under what circumstances, an assignee's reliance might be sufficient by itself under § 523(a)(2)(B).

The Bankruptcy Appellate Panel has indicated that an assignee's reliance, under certain circumstances and when not contested, may support a finding of reliance under § 523(a)(2)(B)(iii). See Tustin Thrift & Loan Ass'n v. Maldonado (In re Maldonado), 228 B.R. 735, 737–740 (9th Cir. BAP 1999). However, this case does not present the unaddressed issue of whether an assignee's alleged but contested reliance is sufficient to satisfy § 523(a)(2)(B)(iii). Cf. id. at 737 (such reliance conceded and not contested).

-4-

to prove its claims under § 523(a)(2)(A) and (B). It entered judgment in favor of the Debtor and discharged the Loan on November 3, 2011. Heritage timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Did the bankruptcy court err in determining that Heritage failed to prove that the Loan should be excepted from the Debtor's discharge under § 523(a)(2)?

## IV. STANDARDS OF REVIEW

In reviewing a bankruptcy court's discharge determination, we review its findings of fact for clear error and conclusions of law de novo. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009). Reliance is a factual matter reviewed for clear error. Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 63 (9th Cir. BAP 1998); see also Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1456 (9th Cir. 1992). A factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citing United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009)(en banc)).

We note that if the bankruptcy court's "account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse even though we may be convinced that "had [we] been sitting as the trier of fact, [we] would have

-5-

weighed the evidence differently." <u>Anderson v. City of Bessemer City, N.C.</u>, 470 U.S. 564, 574 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." <u>Id.</u>

The bankruptcy court's evidentiary rulings are reviewed for abuse of discretion. <u>Int'l Ass'n of Firefighters v. City of Vallejo (In re City of Vallejo)</u>, 408 B.R. 280, 291-92 (9th Cir. BAP 2009). A bankruptcy court abuses its discretion if it bases a decision on an incorrect legal rule, or if its application of the law was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. <u>Hinkson</u>, 585 F.3d at 1261-62 & n.21; <u>Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)</u>, 455 B.R. 904, 914 (9th Cir. BAP 2011).

## V. DISCUSSION

Heritage argues that the Debtor committed fraud when he applied for and obtained the Loan, and that this fraud gave rise to a nondischargeable debt under § 523(a)(2). Section 523(a)(2) provides that a debtor is not entitled to a discharge of a debt to the extent that the debt was obtained by:

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or
>
> (B) use of a statement in writing —
>
>> (I)   that is materially false;
>>
>> (ii)  respecting the debtor's or an insider's financial condition;
>>
>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

-6-

> (iv) that the debtor caused to be made or published with intent to deceive. . . .

In order to prevail, Heritage was required to prove: (1) the Debtor made material representations; (2) that he knew at the time were false; (3) with the intention of deceiving the creditor; (4) who justifiably or reasonably relied on the representations; (5) which caused damage as a result. See In re Weinberg, 410 B.R. at 35 (citing Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000)); Hopper v. Everett (In re Everett), 364 B.R. 711, 720 n.28 (Bankr. D. Ariz. 2007) (citing Siriani v. Nw. Nat'l Ins. Co. of Milwaukee, WI (In re Siriani), 967 F.2d 302, 304 (9th Cir. 1992) (holding that due to substantial similarity of § 523(a)(2)(A) and (B), adoption of § 523(a)(2)(A) elements for use in § 523(a)(2)(B) cases is appropriate)). "The creditor bears the burden of proof to establish all five of these elements by a preponderance of the evidence." Id. (citing Slyman, 234 F.3d at 1085).

Heritage argues that it established all the necessary elements because, when the Debtor failed to answer the Requests for Admission, the Debtor admitted that he: (1) "obtained the loan through false pretenses"; (2) "obtained the loan through false representations"; and (3) "obtained the loan through actual fraud."

Federal Rule of Civil Procedure 36(a)(3) provides that if a party does not answer a request for admission within thirty days of being served, it is deemed admitted. Fed. R. Civ. P. 36(a)(3) (incorporated by Rule 7036); Conlon v. United States, 474 F.3d

-7-

616, 621 (9th Cir. 2007). Consequently, the result of the Debtor's failure to answer the Requests for Admission was that the facts set forth in the request became admitted facts.

However, the bankruptcy court determined that the Requests for Admission sought an impermissible admission of a conclusion of law, which exceeded the scope of Fed. R. Civ. P. 36(a)(1)(A). We agree. Heritage's § 523(a)(2) claim requires that the bankruptcy court make the ultimate determination that the Debtor obtained the Loan fraudulently. That determination necessarily requires the bankruptcy court to find that there are sufficient facts to prove each element of § 523(a)(2)(A) or (B). While "requests for admission may relate to the application of law to fact," "opinions of law" are not contemplated by Fed. R. Civ. P. 36(a)(3). 8B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2255 (3d ed. 2012); Disability Rights Council v. Wash. Metro. Area Transit Auth., 234 F.R.D. 1, 3 (D.D.C. 2006) (a party cannot demand that the other party admit the truth of a legal conclusion); Playboy Enters., Inc. v. Welles, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999) (requests for admissions cannot be used to compel an admission of a conclusion of law).

Even to the extent the admissions were not conclusions of law, the admissions did not cover all of the elements that Heritage had to prove by a preponderance of the evidence in order to prevail on the Complaint. The "admitted" facts, at most, established that Heritage proved the first three elements of § 523(a)(2). Although the Loan was funded, Heritage did not establish through the "admitted" facts that Millennium

-8-

justifiably or reasonably relied on the misrepresentations before disbursing the funds under the Loan.

The bankruptcy court ultimately held that Heritage failed to prove the reliance element of its § 523(a)(2) claim for relief.[6] Accordingly, the focus of our analysis is whether the bankruptcy court erred in finding that the element of reliance was not satisfied.

### Justifiable Reliance

Section 523(a)(2)(A) requires a finding that a creditor justifiably rely on a debtor's false statements or misrepresentations, whereas § 523(a)(2)(B) requires that the reliance is reasonable. Field v. Mans, 516 U.S. 59, 74-75 (1995). Justifiable reliance is a subjective standard, which turns on a person's knowledge under the particular circumstances. Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir. 1996). "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. (quoting Field, 516 U.S. at 70.).

Therefore, the inquiry regarding the justifiable standard focuses on "whether the falsity of the representation was or should have been readily apparent to the individual to whom it was made." Beneficial Cal., Inc. v. Brown (In re Brown), 217 B.R. 857, 863 (Bankr. S.D. Cal. 1998) (citations omitted).

---

[6] Because it is the reliance determination that is at issue on appeal, Heritage's argument that the bankruptcy court erred in not giving the admissions proper effect is largely irrelevant.

The justifiable reliance standard generally does not entail a duty to investigate and a person may be justified in relying on a representation of fact even if he might have ascertained the falsity of the representation had he made an investigation. See Field, 516 U.S. at 70. However, a duty to investigate is imposed on a creditor by virtue of suspicious circumstances. Id. at 71; see also, Wheels Unlimited, Inc. v. Sharp (In re Sharp), 2009 WL 511640, *8 (Bankr. D. Idaho Jan. 14, 2009). Thus, "justifiable reliance does not exist where a creditor ignores red flags." Mandalay Resort Grp. v. Miller (In re Miller), 310 B.R. 185, 198 (Bankr. C.D. Cal. 2004) (citing Anastas v. Am. Sav. Bank (In re Anastas), 94 F.3d 1280, 1286 (9th Cir. 1996)). "[A] person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth." In re Eashai, 87 F.3d at 1090-91.

At the trial, a representative for Millennium (Judith Dunham) testified that Millennium routinely relied on borrowers' information provided in their loan applications. Ms. Dunham testified that although she had no recollection of the Debtor's Loan, there were general underwriting standards for subprime loans on the secondary market. She testified that pursuant to those standards, Millennium did not independently verify a borrower's stated income unless it "didn't make sense," for example, if an otherwise low earning professional stated a high monthly income, or if "something look[ed] unusual." Under such circumstances, Ms. Dunham testified that Millennium would undertake further investigation to verify the information provided in the loan application.

-10-

Ms. Dunham testified that with respect to self-employed borrowers, Millennium typically verified employment. Indeed, the Loan Application and the Certification Form permitted Millennium to request further information to document the representations made in the Loan Application, particularly when borrowers were self-employed. Ms. Dunham testified, however, that there was no additional documentation in the Loan records, and that it did not appear that Millennium verified any of the information provided by the Debtor on the Loan Application.

As a result, the bankruptcy court found that "[a]s a business experienced in subprime lending, Millennium should have known" that the Debtor's claim that he earned a "$9,500 monthly salary as the owner of an ambiguous 'consulting' company" did not make sense and warranted further documentation. Order After Trial at 8. Accordingly, it found that Millennium did not justifiably rely on the Debtor's income and employment information as provided in the Loan Application.

Heritage argues on appeal that the bankruptcy court's assumption that a home business should have triggered further investigation of the Debtor's financial information was erroneous because "the converse is also true that home-based businesses are no less credible than ones conducted in a more traditional business setting." Appellant's Opening Br. at 15. However, Ms. Dunham testified that with respect to borrowers who were self-employed, Millennium's practice was typically to verify employment. We also reiterate that a factfinder's choice between two permissible views of the evidence cannot be clearly erroneous. Anderson, 470 U.S. at 574.

Given Ms. Dunham's testimony that Millennium's practice was to require further investigation or documentation when an application contained unusual financial information or self-employment, the bankruptcy court did not make an erroneous finding that Millennium should have conducted further investigation into the representations made by the Debtor on the Loan Application, and without doing so, it could not have justifiably relied on the Debtor's representations.

Reasonable Reliance

Reasonable reliance under § 523(a)(2)(B) focuses on whether reliance would have been reasonable to the hypothetical average person. In re Brown, 217 B.R. at 863; see also, First Mut. Sales Fin. v. Cacciatori (In re Cacciatori), 465 B.R. 545, 555 (Bankr. C.D. Cal. 2012). Reasonable reliance is analyzed under a "prudent person" test. Cashco Fin. Servs., Inc. v. McGee (In re McGee), 359 B.R. 764, 774 (9th Cir. BAP 2006); In re Cacciatori, 465 B.R. at 555 (court must objectively assess the circumstances to determine if creditor exercised degree of care expected from a reasonably cautious person in the same business transaction under similar circumstances). Reasonable reliance is judged in light of the totality of the circumstances on a case-by-case basis. Id.

Again, a creditor is under no duty to investigate in order for its reliance to be reasonable. Furthermore, a creditor's reliance may be reasonable if it adhered to its normal business practices. Nat'l City Bank v. Hill (In re Hill), 2008 WL 2227359, *3 (Bankr. N.D. Cal. May 23, 2008). However, in determining the reasonableness of reliance, the bankruptcy court

-12-

may consider if the lender's normal practices align with industry standards, or if there were any red flags that would have alerted an ordinarily prudent creditor under similar circumstances to the possibility that the representations relied on were not accurate, and whether even minimal investigation would have revealed the inaccuracy. Id.; see also, Highline Capital Corp. v. Register (In re Register), 2010 WL 605314, *6 (Bankr. W.D. Wash. Feb. 19, 2010); In re McGee, 359 B.R. at 775.

The bankruptcy court found that there were red flags that objectively warranted, even under a community standard, some minor investigation into the representations made by the Debtor on the Loan Application. Order After Trial at 8. It found that "Millennium should reasonably have understood that [the Debtor] was a greater risk for default than a better qualified borrower," and therefore should have required additional information to verify the Debtor's income and employment. Consequently, the bankruptcy court found that Millennium did not reasonably rely on the Debtor's representations in the Loan Application. After reviewing the evidence in the record, we conclude that the bankruptcy court's findings were not clearly erroneous.

Two separate representatives from Heritage (Ben Ganter and Mark Scheurman[7]) testified that, as part of the business of making subprime loans in the secondary mortgage market, the established custom and practice is to rely on the information provided in loan applications, particularly the borrower's

---

[7] Mr. Schuerman's testimony was submitted in declaration form. See Order After Trial at 3.

-13-

income, before funding loans. Mr. Scheurman testified that because the "secondary market is highly negotiable and any fraudulent misrepresentations of material facts contained in a [loan application] would have a greater adverse effect on a second trust deed holder . . ., the second deed of trust holder . . . heavily relies on the stated income [and] employment . . . in the [loan application]" to ensure continued payment on the note in the event of foreclosure by the senior lender. See Declaration of Mark Schuerman at 4-5.

Ms. Dunham also testified that there were general underwriting standards for subprime loans, which include verifying income if something appears "unusual," and, for self-employed applicants, verifying employment. These standards do not appear to have been applied with respect to the Debtor's Loan.

We reject Heritage's assertion that the industry practice is to rely solely on the representations in a loan application. The generalized forms that were used indicate there is an industry standard that requires borrowers to verify self-employment or other representations made in connection with a loan. Thus, the language used in the general forms signals that an ordinary prudent creditor does not, in every instance, rely solely on the information that the borrower provides on his application without ever conducting further investigation into the veracity of those representations.

As discussed above, the bankruptcy court found that red flags existed, which required an ordinary creditor to conduct further investigation. We perceive no error in that finding and

-14-

accordingly, we also perceive no error in the bankruptcy court's finding that Heritage failed to prove the reasonable reliance element of § 523(a)(2)(B).

The Debtor made other arguments in his appellate brief: (1) the representations were not material; (2) Heritage's claims are barred by the California anti-deficiency statute, Cal. Code Civ. Proc. § 580(b);[8] and (3) Heritage is not the real party in interest, and therefore did not have standing to file the Complaint. None of these arguments were made to the bankruptcy court. Consequently, they are waived on appeal. Campbell v. Verizon Wireless S-CA (In re Campbell), 336 B.R. 430, 434 n.6 (9th Cir. BAP 2005) (citing O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989) ("The rule in this circuit is that appellate courts will not consider arguments that are not 'properly raise[d] in the trial courts.'")).

Although standing is usually a jurisdictional issue that may not be waived, the Debtor's argument here regarding standing relates only to issues of prudential standing. Prudential standing requires the plaintiff to assert its own claims rather than the claims of another. Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir. 2004). Unlike constitutional standing, prudential standing does not derive from the Constitution and may be waived by a defendant if not properly or timely raised. Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.,

---

[8] Because we do not consider the merits of the Debtor's anti-deficiency argument, we DENY the Debtor's request that we take judicial notice of facts to support that argument.

219 F.3d 895, 899 (9th Cir. 2000).

## VI.   CONCLUSION

Because we conclude that the bankruptcy court did not err when it determined that Heritage failed to prove the Loan should be excepted from discharge under § 523(a)(2)(A) or (B), we AFFIRM.