FILED

NOT FOR PUBLICATION

2/20/2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-13-1106-DPaKu |
| CURTIS CRIPE and LAURIE JAYE CRIPE, | Bk. No. 11-09830-SSC |
| Debtors. | |
| MARTHA GROUT, MD; and STEVEN SWERDFEGER, Ph.D., | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| CURTIS CRIPE; LAURIE JAYE CRIPE, | |
| Appellees. | |

Argued and Submitted on January 23, 2014
at Tempe, Arizona

Filed - February 20, 2014

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Sarah Sharer Curley, Bankruptcy Judge, Presiding

Appearances: Brian M. Mueller, Esq. of Sherman & Howard, LLC for appellants Martha Grout, MD and Steven Swerdfeger, Ph.D.; Andre E. Carman, Esq. of Warnock MacKinlay & Carman, PLCC, for appellees Curtis Cripe and Laurie Jaye Cripe.

Before: DUNN, PAPPAS and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

In deciding a § 523(a)(2)[2] exception to discharge claim asserted against the debtors, the bankruptcy court found the appellants had not met their burden to prove that debtors' misrepresentations of academic credentials proximately caused any loss appellants may have incurred in connection with their purchase jointly with the debtors of an office building that ultimately was foreclosed.  We AFFIRM.

## I.   FACTS

Curtis Cripe and his wife, Laurie Jaye Cripe, operated a business known as CrossRoads Institute, Inc. ("CrossRoads"). CrossRoads in turn operated centers in several states at which Mr. Cripe provided services related to brain development, function and ability remediation.

Martha Grout is a medical doctor.  Dr. Grout and her husband, Steven Swerdfeger, became acquainted with the Cripes in 2001 when they took their minor child to the CrossRoads center in Arizona.  The Cripes represented to Dr. Grout and Mr. Swerdfeger that Mr. Cripe held a Masters Degree in Clinical Psychology from the University of California at Los Angeles and a Ph.D. in Psychology from Saybrook Institute.

There is no suggestion in the record that Dr. Grout was dissatisfied with the services provided to her child by either Mr. Cripe or CrossRoads.  To the contrary, in 2002, shortly after

---

[2]  Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

she had entered private practice, Dr. Grout began a professional and business relationship with Mr. Cripe and/or CrossRoads. Although they maintained separate practices, Dr. Grout and Mr. Cripe shared referrals and operating expenses under the name "CrossRoads Clinic."

When they began working together, Dr. Grout and Mr. Cripe shared workspace first at Mr. Cripe's home office, then at space they leased in the Tatum Building in December 2002. Ultimately, in February 2006, Dr. Grout and Mr. Cripe purchased an office building ("Raintree Building") together.

The Raintree Building was purchased by CrossRoads Raintree, LLC ("the LLC"), an entity formed in 2006 to acquire and own the Raintree Building. Dr. Grout and Mr. Cripe each was a 50% member of the LLC. Dr. Grout, Mr. Swerdfeger, Mr. Cripe and Mrs. Cripe each signed a personal guaranty in connection with the purchase of the Raintree Building.

Dr. Grout thereafter operated her medical practice in one-half of the Raintree Building, and the Cripes operated CrossRoads in the other half of the Raintree Building. Again, although the practices were separate, Dr. Grout and the Cripes did share operating expenses and engaged in a symbiotic relationship of patient referrals.

Sometime after the purchase of the Raintree Building, Dr. Grout learned that Mr. Cripe's academic credentials had been misrepresented to her.[3] Although Mr. Cripe ultimately did obtain

---

[3] The record we have is sparse. The only "testimony" in our record is that found on pages 40, 41, 45, 53 and 216 from a
(continued...)

-3-

a Ph.D. in November 2003, that degree was from Barrington University, a non-accredited school. Mr. Cripe's faculty advisor for his dissertation in psychology held degrees in Interior Design, not psychology. Mr. Cripe's "attendance" was completely on-line.

After learning of Mr. Cripe's actual academic credentials, Dr. Grout informed all of her professional colleagues and severed her professional relationship with Mr. Cripe and CrossRoads. At some point in time not clear in the record, Mr. Cripe removed his practice from the Raintree Building.

As the relationship between the parties deteriorated, litigation ensued. On July 15, 2008, the Cripes sued Dr. Grout and Mr. Swerdfeger in the Maricopa County Superior Court, asserting that Dr. Grout had interfered with Mr. Cripe's contractual relations and business expectancies, had improperly retained his client files, and had defamed him. In the thirteen count state court complaint, the Cripes sought injunctive relief, together with damages and punitive damages in unstated amounts.

---

[3](...continued)
deposition of Mr. Cripe taken on May 1, 2009, and that found on pages 36-38, 63-64, 68-69, 79-83, 86, 94-100, 116, 120, 122 and 124 from the transcript of the trial in the bankruptcy court conducted on December 12, 2012.

The additional record that was available to the bankruptcy court does not appear to have been much more illuminating on many factual issues. For example, the bankruptcy court determined that Dr. Grout learned in 2008 that Mr. Cripe had misrepresented his academic credentials: "And it appears that at some point in time, Dr. Grout found out about these misrepresentations. And the best that the Court can determine is, this . . . would have been perhaps, around 2008." Tr. of Feb. 21, 2013 Hearing 14:16-20. (Emphasis added.)

-4-

Dr. Grout and Mr. Swerdfeger filed counterclaims, seeking unspecified damages based on fraud and fraud in the inducement, seeking recovery of monetary damages relating to the purchase of the Raintree Building and the guaranty of the debt for that purchase, which they asserted proximately resulted from the misrepresentation of Mr. Cripe's educational credentials. The state court dismissed the Cripes' complaint with prejudice on November 17, 2010, and scheduled further proceedings on the counterclaims.

On April 8, 2011, the Cripes filed for bankruptcy protection in a chapter 11 case. Dr. Grout and Mr. Swerdfeger timely filed an adversary proceeding seeking a determination that damages they suffered as a result of Mr. Cripe's misrepresentation of his academic credentials were excepted from the Cripes' discharge. The damages at issue were related to the purchase of the Raintree Building and Dr. Grout and Mr. Swerdfeger's guarantee of its debt.

Trial of the adversary proceeding took place on December 12, 2012. Dr. Grout and Mr. Swerdfeger rested following the presentation of their case, and the Cripes moved for a "directed verdict," which the bankruptcy court considered as a motion for judgment on partial findings pursuant to Civil Rule 52(c), applicable in the adversary proceeding pursuant to Rule 7052.

On February 21, 2013, the bankruptcy court made oral findings of fact and conclusions of law on the record. The bankruptcy court found that Mr. and Mrs. Cripe did misrepresent Mr. Cripe's academic credentials to Dr. Grout and Mr. Swerdfeger. However, the bankruptcy court ultimately decided that any loss

-5-

Dr. Grout and Mr. Swerdfeger incurred with respect to the Raintree Building was not proximately caused by the misrepresentations. Accordingly, the bankruptcy court determined that the Cripes were entitled to discharge any debt they might owe to Dr. Grout and Mr. Swerdfeger, granted judgment on partial findings in favor of the Cripes pursuant to Civil Rule 52(c),[4] and dismissed the adversary proceeding. This timely appeal followed.

## II.   JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUE[5]

Whether the bankruptcy court erred when it determined that the misrepresentation of Mr. Cripe's academic credentials was not

---

[4]   Civil Rule 52(c) provides -

**Judgment on Partial Findings.** If a party has been fully heard on an issue during a nonjury trial, and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. . . .

[5]   In their brief on appeal, the Cripes request an award of attorneys fees and costs on the basis that both the "action" and the appeal were taken in bad faith and for purposes of harassment. Attorneys fees were not a matter ruled upon by the bankruptcy court. Thus, our review is limited to a request for fees in the appeal. Rule 8020 governs such a request. That rule was not addressed by the Cripes. Accordingly, the request was not properly raised, and we do not consider it as an issue in this appeal.

-6-

the proximate cause of any loss Dr. Grout and Mr. Swerdfeger incurred in connection with the Raintree Building.

## IV. STANDARDS OF REVIEW

We review questions of fact for clear error. Rule 8013; <u>Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)</u>, 344 B.R. 94, 99 (9th Cir. BAP 2006). This includes the bankruptcy court's finding as to whether a requisite element of a fraud discharge exception has been proven. <u>See</u> <u>Anastas v. Am. Sav. Bank (In re Anastas)</u>, 94 F.3d 1280, 1283 (9th Cir. 1996).[6] <u>See also</u> <u>Rubin v. West (In re Rubin)</u>, 875 F.2d 755, 758 (9th Cir. 1989)(the determination of proximate causation is a question of fact reviewed for clear error). Here, we review for clear error the bankruptcy court's findings upon which it entered judgment under Civil Rule 52(c). <u>Ritchie v. United States</u>, 451 F.3d 1019 (9th Cir. 2006).

We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262 & n.20 (9th Cir. 2009)(en banc). "Under the 'clear error' standard, we accept findings of fact unless the findings leave 'the definite and firm conviction that a mistake has been

---

[6] The appellants do not assert that the bankruptcy court selected an improper legal rule and/or applied that rule incorrectly. Thus, the Panel's review does not fall within the standard for mixed questions of law and fact set forth in <u>Murray v. Bammer (In re Bammer)</u>, 131 F.3d 788, 791-92 (9th Cir. 1997) (en banc). <u>See generally</u> <u>Cutter v. Seror (In re Cutter)</u>, 466 Fed. Appx. 616 (9th Cir. 2012), for a recent unpublished Ninth Circuit discussion of the distinction.

committed by the trial judge.'" <u>Wolkowitz v. Beverly</u> <u>(In re Beverly)</u>, 374 B.R. 221, 230, <u>aff'd in part & dismissed in part</u>, 551 F.3d 1092 (9th Cir. 2008), citing <u>Latman v. Burdette</u>, 366 F.3d 774, 781 (9th Cir. 2004).

## V.   DISCUSSION

No issue is raised in this appeal that the bankruptcy court did not identify and apply the correct legal rules in determining whether § 523(a)(2)(A) should preclude the Cripes' discharge from encompassing any claim of Dr. Grout and Mr. Swerdfeger based upon the misrepresentation of Mr. Cripe's academic credentials. Rather, this appeal concerns only the bankruptcy court's fact findings, specifically, those findings that informed the bankruptcy court's determination that the damages asserted by Dr. Grout and Mr. Swerdfeger did not proximately result from the Cripes' misrepresentation of Mr. Cripe's academic credentials.

The elements of a claim for relief under § 523(a)(2)(A) are well established in the Ninth Circuit.  To prove actual fraud in order to except their claim from the Cripes' discharge, Dr. Grout and Mr. Swerdfeger were required to establish each of the following elements by a preponderance of the evidence, <u>Grogan v. Garner</u>, 498 U.S. 279 (1991):  (1) The Cripes made the subject representations; (2) at the time they made the subject representations, the Cripes knew the representations were false; (3) the Cripes made the subject representations with the intention of deceiving Dr. Grout and Mr. Swerdfeger; (4) Dr. Grout and Mr. Swerdfeger justifiably relied upon the Cripes' representations; and (5) Dr. Grout and Mr. Swerdfeger suffered the alleged damages as the proximate result of the

-8-

subject representations having been made. <u>Ghomeshi v. Sabban (In re Sabban)</u>, 600 F.3d 1219, 1222 (9th Cir. 2010).

Dr. Grout asserts that she never would have entered into the business arrangement to purchase the Raintree Building with the Cripes had she known Mr. Cripe had misrepresented his credentials. She contends that the mere entry into the financial relationship resulted in her loss of all funds she ever contributed toward the Raintree Building and any related indebtedness.

As a general rule, for damages to be the proximate result of a misrepresentation, the subject misrepresentation must have been a "substantial factor" in determining the "course of conduct" that resulted in loss. <u>Beneficial Cal., Inc. v. Brown (In re Brown)</u>, 217 B.R. 857, 862 (Bankr. S.D. Cal. 1998). Further, to establish proximate cause, the loss must reasonably be expected to result from reliance on the misrepresentation. <u>Id.</u>

Based on the record before it, the bankruptcy court determined that the financial loss Dr. Grout suffered through her investment in the LLC and/or the Raintree Building could not reasonably be expected to result from Mr. Cripe's misrepresentation of his academic credentials, and that the misrepresentation was not a substantial factor in determining the course of conduct that resulted in the financial loss.

First, and primarily, the LLC Operating Agreement did not require that any party to it hold any particular degree. In fact, the Operating Agreement authorized the addition of members without making academic degrees a condition of membership.

Dr. Grout conceded that the services Mr. Cripe performed in his practice did not require a license or any degree. Thus, neither the lack of a degree nor the misrepresentation, alone or together, could reasonably be expected to result in a loss in a purely financial relationship, such as the purchase of a building through a jointly owned limited liability company.[7]

Second, the evidence Dr. Grout presented at the trial was not particularly clear regarding the "falling out" between Dr. Grout and the Cripes, including what caused it and when it occurred. Specifically, the bankruptcy court could not ascertain from the evidence whether it took place solely because of Dr. Grout's discovery of the misrepresentation, or whether it was predicated at least in part on serious injuries Mr. Cripe sustained in an automobile accident in 2009.

Third, while the evidence establishes that the Cripes at some point vacated the Raintree Building, the bankruptcy court could not determine when that happened other than it likely was in 2009. Also at some uncertain point in time, Dr. Grout remodeled at least a portion of the Raintree Building. Dr. Grout and Mr. Swerdfeger presented no evidence to establish (1) whether that remodel occurred while the Cripes still occupied the Raintree Building or (2) the cost of the remodel (other than a rough estimate).

Fourth, the record before the bankruptcy court contained evidence of "offers" made by the Cripes to assist Dr. Grout in

_____

[7] No issue as to the implications of the misrepresentation on Dr. Grout's professional relationship with Mr. Cripe was before the bankruptcy court.

-10-

dealing with the financial implications of their disintegrated business relationship. It appears that the Cripes made more than one offer to purchase Dr. Grout's interest in the LLC, the Raintree Building, or both. Dr. Grout testified she never took the offers seriously.

After pointing out that the Cripes' offers to mitigate damages were rejected out of hand by Dr. Grout, the bankruptcy court noted that there was no evidence that Dr. Grout made any effort in three years or more to solve the financial problem created by the end of her business relationship with the Cripes and related to the Raintree Building. Without explanation in the record as to why, Dr. Grout and Mr. Swerdfeger remained in possession of the Raintree Building until August of 2012, when the Raintree Building was foreclosed upon. The bankruptcy court commented on the state of the real estate market generally during that period but refused to "speculate" that an unfavorable market condition was what had precluded Dr. Grout from making an attempt to sell the Raintree Building.

In their reply brief, appellants challenge the "finding" that the Cripes offered to purchase the Raintree Building. "Nowhere in the record, and in fact, nowhere in real life, did the Cripes ever make any type of offer to the Plaintiffs, fair market value or otherwise, to purchase the Building. To base a finding of no causation based on an unrealized hypothetical is clearly erroneous." Appellants' Reply Brief at 7:6-9. We have been provided no record setting forth the content of the offers. Because we do not have the entire record that was before the bankruptcy court, we cannot determine whether there is any merit

-11-

to this assertion. However, we are entitled to presume that anything Dr. Grout and Mr. Swerdfeger omitted from the record they submitted on appeal would not be helpful to their position. Gionis v. Wayne (In re Gionis), 170 B.R. 675, 680–81 (9th Cir. BAP 1994).

Also in their reply brief, appellants assert that they had been trying since the time they filed their counterclaims in the state court to rescind the purchase of the Raintree Building and that their loss is to be considered rescission damages. See generally Appellants' Reply Brief at 7:14-8:14. They contend that the Cripes' bad faith in bringing the state court action and their subsequent filing of the bankruptcy case delayed their ability to "mitigate" the loss. It is not clear from the record that any issue of "bad faith" in the underlying state court litigation was raised in the bankruptcy court. Either it wasn't, in which case it is waived, or it was, but on this record, we cannot review whether the bankruptcy court erred by not giving it due consideration. As it stands, the bankruptcy court did find that Dr. Grout undertook a remodel of the Raintree Building after Mr. Cripe had vacated his half. Because appellants provided us no record otherwise, we might assume that the remodel took place at that time so as to refute appellants' assertions that they were attempting to rescind the purchase.

The burden was on Dr. Grout and Mr. Swerdfeger to present sufficient evidence to support a finding of proximate cause. The foregoing findings of the bankruptcy court sufficiently articulate that intervening factors between the time of the misrepresentation and the ultimate loss raise questions regarding

whether the misrepresentation alone was a "substantial factor" in determining the "course of conduct" that resulted in loss, and whether the loss reasonably could be expected to follow from the misrepresentation. Nothing in the record leads us to conclude that the bankruptcy court's findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Hinkson, 585 F.3d at 1262 & n.20. Accordingly, we must AFFIRM.

## VI. CONCLUSION

The bankruptcy court did not clearly err when it found the misrepresentation of Mr. Cripe's academic credentials (1) was not a substantial factor in determining the course of conduct that resulted in any financial loss to Dr. Grout and Mr. Swerdfeger in connection with their investment in the Raintree Building and (2) could not reasonably be expected to result in that loss. We AFFIRM.

-13-